IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JAMES A. BURKE, JR.   :  CIVIL ACTION
         :
    v.     :
         :
JOHN KRESTES, et al.   :  NO. 08-4286


<u>MEMORANDUM</u>

McLaughlin, J.           July 27, 2010

# TABLE OF CONTENTS

Page

I. BACKGROUND.. . . . . . . . . . . . . . . . . . . . . 2

    A    The Petitioner Pleads Guilty .. . . . . . . . . . 3

        1.   The April 11, 1991, Plea Hearing . . . . . . . 3

        2    The Petitioner's Written Plea
           Statement . . . . . . . . . . . . . . . . . . 7

        3.   The Condition to the Petitioner's
           Plea . . . . . . . . . . . . . . . . . . . . 12

    B.   The Petitioner Testifies at His Co-Defendant's
        Trial.. . . . . . . . . . . . . . . . . . . . 13

    C    The Petitioner Attempts to Withdraw
        His Guilty Plea at Sentencing and in
        Post-Sentence Motions . . . . . . . . . . . . . 16

    D.   The Petitioner's First PCRA Petition .. . . . . . . 19

    E.   The Petitioner's Second PCRA Petition.. . . . . . . 20

        1.   The February 20, 2002, Hearing.. . . . . . . . 21

        2.   The March 15, 2002, Hearing .. . . . . . . . . 23

        3.   The Decision.. . . . . . . . . . . . . . . . . 26

        4.   The Appeal.. . . . . . . . . . . . . . . . . . 29

    F.   The Petitioner's Third PCRA Petition .. . . . . . . 32

        1.   The Petition.. . . . . . . . . . . . . . . . . 32

        2.   The Decision.. . . . . . . . . . . . . . . . . 35

        3.   The Appeal.. . . . . . . . . . . . . . . . . . 37

    G.   The Petitioner's Petition for Writ
        of Habeas Corpus . . . . . . . . . . . . . . . . 41

II.  ANALYSIS.. . . . . . . . . . . . . . . . . . . . . .   46

    A.   The Timeliness of the Petition . . . . . . . . . .   47

    B.   Procedural Default . . . . . . . . . . . . . . .   49

         1.   Exhaustion of Claims in Ground One.. . . . . .   49

         2.   Exhaustion of Claims in Ground Two.. . . . . .   52

         3.   Exhaustion of Claims in Ground Three.. . . . .   53

         4.   Exhaustion of Claims in Ground Four . . . . .   54

         5.   Excuse for Procedurally Defaulted
              Claims.. . . . . . . . . . . . . . . . . . .   54

    C.   Cognizability.. . . . . . . . . . . . . . . . . .   55

    D.   Review of the Remaining Claims on the
         Merits . . . . . . . . . . . . . . . . . . . . .   59

         1.   Claims of Error in Grounds Two
              and Three . . . . . . . . . . . . . . . . .   61

              a.   Claims 2.3 and 3.2 . . . . . . . . . .   63

              b.   The Remaining Claims of Grounds
                   Two and Three.. . . . . . . . . . . .   73

                   (1)  Claim 2.2 . . . . . . . . . . . .   73

                   (2)  Claim 2.5 . . . . . . . . . . . .   75

                   (3)  Claim 2.7 . . . . . . . . . . . .   78

                   (4)  Claim 3.1 . . . . . . . . . . . .   79

         2.   Claims of Error in Ground One . . . . . . .   79

              a.   Claim 1.1 . . . . . . . . . . . . . .   81

              b.   Claim 1.2 . . . . . . . . . . . . . .   83

              c.   Claim 1.3 . . . . . . . . . . . . . .   84

d.  Claim 1.4 . . . . . . . . . . . . . . . .  86

e.  Claim 1.5 . . . . . . . . . . . . . . . .  87

f.  Claim 1.6 . . . . . . . . . . . . . . . .  88

g.  Claim 1.7 . . . . . . . . . . . . . . . .  90

h.  Claim 1.8 . . . . . . . . . . . . . . . .  92

i.  Claim 1.10 . . . . . . . . . . . . . . .  94

j.  Claim 1.11 . . . . . . . . . . . . . . .  96

k.  Claim 1.12 . . . . . . . . . . . . . . .  98

l.  Claim 1.13 . . . . . . . . . . . . . . . 103

E.  Availability of an Evidentiary Hearing. . . . . . . 108

F.  Issuance of a Certificate of Appealability. . . . . 110

JAMES A. BURKE, JR.            :      CIVIL ACTION
                               :
                               :
         v.                    :
                               :
JOHN KRESTES, et al.           :      NO. 08-4286


MEMORANDUM

McLaughlin, J.                               July 27, 2010


        Petitioner James A. Burke filed a petition for habeas
corpus in this Court pursuant to 28 U.S.C. § 2254.  The
petitioner, who is currently incarcerated in the State
Correctional Institution-Mahanoy in Frackville, Pennsylvania,
pled guilty in 1991 to second-degree murder for his
participation, along with his cousin, in the robbery and shooting
death of a drug dealer.  He now seeks habeas relief claiming
ineffective assistance of counsel and various errors by the
courts that considered his plea, his direct appeal, and his
petition for post-conviction relief.

        The habeas petition was referred to the Honorable
Magistrate Judge Carol Sandra Moore Wells.  Judge Wells has filed
a report and recommendation, recommending that the petition be
denied and dismissed without an evidentiary hearing and with a
finding that there is no basis for the issuance of a certificate

of appealability. The petitioner has filed timely objections to the report and recommendation.

The Court has reviewed the report and recommendation, the petitioner's objections, the petitions, answers, and memoranda filed by the parties, and the state court record. The issues raised by the petition are complex. The habeas petition raises over thirty claims for relief involving alleged errors by counsel and the state courts at both the trial and appellate levels and in both direct and collateral proceedings. The issues raised by the petition are complicated by the convoluted procedural history of the case, spanning over nineteen years.

Upon review, the Court finds that the petitioner's claims lack merit and should be dismissed without an evidentiary hearing. Because of the complexity of the issues involved and a substantial showing of the possible violation of a constitutional right, however, the Court will issue a certificate of appealability for the petitioner's claims concerning the adequacy of his plea colloquy and the voluntariness of his plea and for his claim alleging that his counsel was inadequate for allowing his direct appeal to be delayed for over ten years.

I.    BACKGROUND

On September 26, 1990, a drug dealer named Kempt C. Qualis was robbed, shot, and killed. Petitioner James C. Burke

and his cousin, Kevin Crawford, were arrested for the crime.  The petitioner was charged in the Court of Common Pleas of Berks County with twenty-four counts, including first-degree murder. The prosecution filed a notice of intent to seek the death penalty on the first degree murder charge.

        A      <u>The Petitioner Pleads Guilty</u>

On April 11, 1991, the petitioner, represented by trial counsel, pled guilty to second degree murder.  As a condition of the plea, the government <u>nolle</u> <u>prossed</u> the other twenty-three counts against the petitioner, including the charge of first degree murder for which the government had sought the death penalty.

        1.    <u>The April 11, 1991, Plea Hearing</u>

At the beginning of April 11, 1991, hearing, the prosecution stated that the petitioner would be entering a plea to murder in the second degree and set out the Commonwealth's allegations against the petitioner:  that on or about September 26 of 1990, the petitioner and his co-defendant Kevin Crawford entered Berks County, Pennsylvania, and shot Kempt Qualis while in the course of committing a robbery of cash and cocaine.  Mr. Qualis was alleged to have been killed with a 9 millimeter

handgun, and the petitioner was alleged to have fired the gun that shot and killed him. 4/11/91 N.T. at 2-3.

The trial court confirmed with the petitioner's counsel that all pending motions by the petitioner had been withdrawn in light of the plea. The trial court mentioned receiving a handwritten, pro se pleading from the petitioner for discovery. The petitioner's counsel explained to the court that the petitioner had filed the pro se motion because he was concerned that his counsel might not meet with him concerning the "elements of the case," the filing of pretrial motions, and the availability of "certain documents." The petitioner's counsel told the court that he believed that the petitioner was now satisfied with his representation and that the motion could be withdrawn. The petitioner was asked if he agreed that his counsel had tried to represent him competently and effectively and he agreed that he had. 4/11/91 N.T. at 4-7.

The trial court next conducted a colloquy with the petitioner. In the colloquy, the trial court asked the petitioner his age, educational background, and his employment history. The court asked whether the petitioner had ever been disabled and whether he was on medication. The court inquired about the petitioner's family, whether he was married and had children, his children's ages and gender, whether his parents

were living and still lived together and whether they were his natural or adoptive parents.  4/11/91 N.T. at 8-11.

In the colloquy, the trial court did not discuss with the petitioner the nature of the charges to which the petitioner would be pleading, the factual basis for the plea, or the range of possible sentences he could receive.  The trial court also did not discuss the petitioner's right to a jury, his right to be presumed innocent, or his right against self-incrimination, all of which he would be giving up by pleading guilty.  The only questions directed by the trial court to the petitioner concerning his plea were in the following exchange:

> THE COURT:     You understand fully why you're here today and the purpose of the plea and what the significance of the plea is, right?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT:     You had a chance to review this with [your counsel]?
>
> THE DEFENDANT: Yes.
>
> THE COURT:     And you are satisfied with the services that [your counsel] has extended to you?
>
> THE DEFENDANT: Yes, Your Honor.

4/11/91 N.T. at 10.

The prosecution described the plea to the trial court as a "second degree plea, which carries a mandatory life sentence" and stated that the proposed plea agreement had been

5

offered to both the petitioner and his co-defendant, but that the
co-defendant was "deferring his decision until tomorrow." The
prosecution stated that "[t]here have been no other concessions,
offers, or whatnot in this case." 4/11/91 N.T. at 12.

The trial court then confirmed with the prosecution
that it had initially believed that there were aggravating
circumstances in the case justifying a notice of intent to seek
the death penalty. The prosecution confirmed that it had
initially notified the petitioner of the government's intent to
seek the death penalty on the basis of four aggravating
circumstances, which included killing in perpetration of a
felony, killing in perpetration of a specified felony involving a
controlled substance or drug trafficking, and killing in a manner
that created a grave risk of harm to another (the co-defendant).
4/11/91 N.T. at 12-15.

At the conclusion of the hearing, the trial court
stated that it was accepting the plea, but that its acceptance
was "conditioned" on further review of the record and the pre-
sentence investigation report. The trial court stated both that
it was accepting the plea, but also that it could decide in the
future to "turn the plea bargain down":

> THE COURT:    Excuse me.  All right.  Then
> at this time we do have a plea bargain, Mr.
> Burke [the petitioner].  I am going to accept
> your plea today, but its going to be
> conditioned – the Court does have discretion
> on whether it accepts a plea bargain or not,

and I want to learn more about you.  I don't
necessarily want to be here asking you a
series of questions, because if I should turn
the plea bargain down, I don't want to get
into any of the facts and prefer to have a
chance to look at the record more closely and
your presentence investigation report will
give more background on you then I asked you
about.  Okay?

THE DEFENDANT: Yes, Your Honor.

THE COURT:    But we will accept his plea at
this time and then we will probably go to
sentencing in the very near future as near as
next week sometime, understood?

THE DEFENDANT: Yes, Your Honor.

4/11/91 N.T. at 19-20.


## 2    The Petitioner's Written Plea Statement

The petitioner signed a written statement to accompany
his request to enter a guilty plea.  The statement is a ten-page
form with typewritten questions and handwritten answers.  It is
dated April 11, 1991, and signed by the petitioner, his counsel,
and the district attorney.

The first part of the statement comprises fifty-seven
typewritten questions and the petitioner's handwritten responses.
The questions are those that would be asked in a plea colloquy.
They include whether the petitioner speaks English or has any
mental impairment, whether the petitioner understands that he has
been charged with the crimes listed later in the form and has
pled not guilty and whether he now wishes to plead guilty;

whether he understands the nature and elements of the offence, as described later in the petition, and whether he agrees that the recitation of facts in the petition constitutes his version of events; whether he committed the acts in his version of events intentionally, knowingly, or recklessly, with an explanation of the meaning of those terms; whether he understands the maximum permissible sentence that can be imposed for each crime for which he is pleading guilty; and whether the terms of his plea bargain are properly set out in the statement.

In his handwritten responses to the these questions, the petitioner indicated that he spoke English, was not suffering from mental illness, and was not under the influence of alcohol or medication. The petitioner answered affirmatively to all of the questions about his understanding of the charges, the sentence, and the plea, and agreed that the summary of facts set out later in the statement constituted his version of events. He stated that he did not commit the acts set out in the summary intentionally, but that he did them knowingly.

Questions in the statement asked if the petitioner understood his rights: the right to testify on his own behalf and call or compel witnesses and present his own version of the facts; the presumption of innocence and the right to remain silent; the right to be proved guilty beyond a reasonable doubt; the right to a trial by jury, with the right to participate in

jury selection and to challenge the jury array, and that any jury verdict must be unanimous; the right to be tried by a judge; the right to file pretrial motions to dismiss charges, challenge evidence, or require the prosecution to produce evidence; the right to confront witnesses against him; the right not to have his silence or lack of witnesses used against him; and the right to appeal or to ask for a new trial or for the dismissal of charges, if he is found guilty.  For all of these, the petitioner was asked if he understood that, by pleading guilty, he would be giving up these rights.  The petitioner answered affirmatively to all of these questions.

Other questions asked whether anyone had forced the petitioner to plead guilty or promised him anything other than what was set out as the plea agreement.  The petitioner answered negatively.  The statement also asked whether the petitioner had an opportunity to consult with counsel and whether his attorney had gone over the meaning of the terms in the statement, including the terms "intentionally" and "knowingly."  The petitioner answered affirmatively.

The next section of the plea statement asked the petitioner to set out the crimes with which he had been charged and the crimes to which he was pleading guilty.  For the crimes to which he was pleading guilty, the statement asked the petitioner to set out the elements of those crimes and the facts

in support of those elements.  The statement also asked the petitioner to set out the maximum permissible sentence or fines for the crimes to which he was pleading and for the terms of any plea bargain.

The petitioner handwrote his responses to these questions.  He stated that he was pleading guilty to "Count 3 only."  Count Three of the indictment was for second degree murder in violation of 18 Pa. Cons. Stat. Ann. § 2502(b).  The petitioner stated that the elements of that crime are "intentionally, knowingly, recklessly, or negligently causing the death of another while engaged as a principal or accomplice in the perpetration of a felony."  The petitioner gave the facts supporting those elements as:

> On or about September 26, 1990, I took part in the shooting of Kept Quallis at the 200 block of Chestnut Street in West Reading, Pennsylvania.  I did so under circumstances in which I intended to commit a Felony offence at the time.

The statement asked for the maximum sentence and/or fine that could be imposed for the crime to which the petitioner was pleading guilty, if the judge were to reject the plea bargain or if the plea was an "open" one.  The handwritten response reads: "Felony 1 - 20 years and $25,000[;] 2nd Degree Murder - life incarceration."  Another section of the statement asked for the "precise terms and conditions" of any plea bargain.  The handwritten entry for this section states:  "2nd degree MURDER[;]

10

Life imprisonment to be imposed on Count Number 3[;] All other charges to be dismissed."  In this entry, the number "2" in the phrase "2nd degree MURDER" appears to be written over a fainter number "3."

The petitioner signed his name at the bottom of each of the first nine pages of the ten page statement.  On the tenth page, he signed and dated a statement affirming that he had read the document and understood its full meaning and that he was still requesting the Court to allow him to plead guilty to the specified offence.  He also attested that the signatures on the document were his.

The petitioner's counsel signed and dated a certification on the last page of the statement.  In it, he certified that he had advised the petitioner of the contents and meaning of the statement and that, in counsel's belief, the petitioner understands the statement's meaning and the consequences of his plea.  The district attorney assigned to the petitioner's case also signed and dated a certification on the last page of the statement, in which he stated that he had reviewed the plea bargain set out in the statement and that it conformed with his understanding of the agreement.

3.   <u>The Condition to the Petitioner's Plea</u>

The petitioner maintains that the guilty plea that he entered on April 11, 1991, was conditional.  He contends that, as part of his plea agreement, he was allowed to withdraw his plea if his co-defendant, Kevin Crawford, declined to plead guilty and went to trial.  Neither the transcript of the April 11, 1991, hearing nor the petitioner's written statement accompanying the plea reflects any such condition.

The claimed condition, however, is reflected in a subsequent proceeding, held on April 19, 1991, after the petitioner's co-defendant had declined a plea and elected to proceed to trial.  Present were the prosecuting attorney and the petitioner's counsel, but not the petitioner.  At the proceeding, the trial court noted that it had done something "very unique" and had allowed the petitioner to enter a conditional plea with "reservations":

> when [petitioner's counsel] Mr. Dorsett came
> in originally, he said he had a client that
> wanted to take a plea but it was a
> conditional thing and the condition was that
> he wanted to see what his co-defendant would
> do.  And if his co-defendant didn't go
> through with matters, he had some
> reservations about letting the plea stand and
> to at least keep the record open so he could
> submit to the Court a request to withdraw the
> original plea.

4/19/91 N.T. at 2.  The petitioner's counsel then told the trial court that he had consulted with his client and stated for the

record that the petitioner did not want to withdraw his plea. The trial court issued an order stating that "the Court is now being advised that Mr. Burke now wishes to leave his guilty plea stand and understands that there will be no conditions other than those provided by law from this point on with respect to the validity of his guilty plea." The trial court, however, did not conduct a colloquy with the petitioner concerning the decision not to withdraw the plea.

B.    The Petitioner Testifies at His Co-Defendant's Trial

The petitioner subsequently testified as a government witness in the trial of his co-defendant, Kevin Crawford, on July 19, 1991.

During direct examination, the petitioner admitted that he and his co-defendant attempted to buy cocaine knowing that he did not have enough money to pay and intending to simply "take it." 7/19/91 N.T. in Commonwealth v. Crawford, No. 3255/90 at 277-79.[1]  The petitioner admitted that after the seller, Mr. Qualis, joined the petitioner and his cousin in their truck, the petitioner took a gun and, while his cousin was leaning forward

---

[1]    The petitioner's testimony at the trial of his co-defendant, Kevin Crawford, appears in the state court record, attached to the transcript of the March 15, 2002, hearing held on the petitioner's second petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541 et seq.

to taste the cocaine, pointed the gun at Qualis's head, and the gun "went off." The petitioner testified that he had not intended to shoot, but only intended to coerce Qualis to give them the rest of his cocaine. Id. at 281-83, 285.

The petitioner was asked on direct examination about his plea bargain with the government. The petitioner stated that he had pled guilty to second degree murder and had not yet been sentenced, but that he expected to receive a life sentence. The petitioner stated that there were no "terms" to his plea and no agreement for his testimony against his co-defendant. Id. at 264.

On cross-examination, the petitioner admitted that, as part of his guilty plea, all of the charges against him, including first degree murder, were dropped except for the charge of second degree murder. The petitioner admitted that he expected "mandatory life in jail" but that he also expected to get out in 18 years because of "pardons and things like that . . . [i]f you do your work and go to school and things like that, you know, there's a possibility of getting out." Id. at 311-12. The petitioner testified that his counsel had sent him a letter telling him that the district attorney had said that, if the petitioner testified accurately at his co-defendant's trial, then a letter would be put in the petitioner's file "from the Governor stating cooperation provided." The petitioner said that

he believed he could use this letter to attempt to get out of prison in eighteen years.   Id. at 312.

On cross-examination, counsel for the co-defendant attempted to get the petitioner to admit that he was concerned about a post-arrest statement by his co-defendant in which the co-defendant quoted the petitioner as saying on the way to buy the drugs that "I ought to kill somebody."  Counsel for the co-defendant contended that this statement had lead the petitioner to plead guilty to second degree murder.  The petitioner disagreed, saying that he took the plea because he had committed the crime:  "I took the second degree after I went over everything and I found out you know, everything that happened, I figured I did it.  That is all there is to it."  Id. at 313-14. Asked whether he was testifying against his co-defendant because he wanted his co-defendant to be similarly punished, the petitioner said:

> I don't want to see him get anything, like I don't want to see myself get anything.  But the crime happened, it's that simple.  I am not going to be implicated in everything that happened, like what people are trying to do. I'd rather just come out and tell the truth. I don't have nothing to win or lose by sitting up here.

Id. at 315.

C    The Petitioner Attempts to Withdraw His Guilty Plea at
     Sentencing and in Post-Sentence Motions

The petitioner's sentencing took place on October 16, 1991, after his co-defendant's trial.  At the opening of the hearing, the petitioner told the trial court that he wanted to withdraw his plea and go to trial.  The trial court then conducted a colloquy with the petitioner concerning, among other subjects, his participation in robbery and murder of Mr. Qualis.  After the colloquy, the prosecution stated that it objected to the petitioner's attempt to withdraw his plea.  The trial court, apparently not remembering or not having heard the petitioner state that he wished to withdraw his plea at the beginning of the hearing, expressed surprise at the request and suggested that, had it known of the request to withdraw the plea, it would not have conducted the colloquy with the petitioner:

> Because I just questioned this man about a
> whole series of things here.  Now I'm hearing
> that maybe he'd like to withdraw his plea.
> Pretty damning information that was given
> here in questioning him.  I thought we were
> going to sentence.

10/16/91 N.T. at 16; see also id. at 22.

The trial court then asked the petitioner his reasons for requesting to withdraw his plea.  The petitioner stated that he had been asking to withdraw his plea "for a few months now," to which his counsel interjected that this was "not true."  The petitioner then stated that his only reason for entering the plea

agreement was to avoid being tried with his co-defendant.  The

petitioner said that he believed that, if tried together, his co-

defendant would testify (falsely according to the petitioner)

that the petitioner had expressed his intention to kill the

victim before the shooting.  The petitioner said that this

evidence of premeditation was the basis for the prosecution's

seeking the death penalty:

> The only reason I signed that plea back then,
> Your Honor, was so that my cousin and I
> wouldn't have a trial at the same time so he
> would be able to testify to what his
> statements said.  In his statement, he said
> that on the way down [to meet the victim], I
> said I was going to kill him a few times,
> okay, which he was going to testify to that.
> And I never said it.  And that's why the
> death penalty was being asked in the first
> place, was because of this statement showing
> premeditation, which my cousin knew in the
> first place when I agreed to goin' down that
> we were goin' down to a girl, not a guy.  And
> in his statement he says I killed him.

10/16/91 N.T. at 18-19.

The prosecution opposed the petitioner's request to

withdraw his plea, noting that at his co-defendant's trial, the

petitioner had admitted to the shooting and killing of Mr.

Qualis.  The petitioner then interjected that "I still admit it."

The court confirmed that the petitioner had been charged

originally with first degree murder with a notice of intent to

seek the death penalty and that the petitioner's guilty plea to

second degree murder meant that the death penalty could not be applied. 10/16/91 N.T. at 18-21.

The trial court reiterated that it would not have conducted its colloquy with the petitioner had it known that he wished to withdraw his guilty plea, but noted that the petitioner had admitted at his co-defendant's trial that he had shot and killed Mr. Qualis. The court asked the petitioner whether he was "serious" that he wished to withdraw his plea, and the petitioner confirmed that he was. The Court then said that it would "refuse to entertain" the petitioner's motion and, expressing concern that "the system was being toyed with," instructed the district attorney's office to "look in to" the petitioner's testimony at his co-defendant's trial and his statements at the sentencing, saying that he thought the petitioner was trying to "change the facts as he testified [to] against his [co-defendant]. 10/16/91 N.T. at 23. The Court then proceeded to accept the plea bargain and to sentence the petitioner to a term of life imprisonment on the charge of second degree murder. Id.

After his sentencing, the petitioner filed, through counsel, a timely post-sentence motion to withdraw his guilty plea on October 28, 1991. The trial court scheduled a hearing on the motion, but no hearing was apparently ever held, and the motion was never formally decided.

D.    The Petitioner's First PCRA Petition

After his sentencing, the petitioner attempted to have
his public defender removed as counsel so that he could proceed
pro se.  The petitioner first made this request in July 1995 and
made multiple additional requests over the next several years.
On August 21, 1998, the public defender's office responded to the
petitioner's requests and filed a request to withdraw as counsel.
The trial court promptly granted the public defender's request.
See 10/21/99 PCRA Trial Court Order at 5-6.

The petitioner filed his first PCRA petition, pro se,
on December 15, 1998.  He was then appointed counsel, who filed
an amended PCRA petition on October 6, 1999.  The amended
petition alleged as grounds for relief that the trial court
lacked jurisdiction to enter a conditional plea because such a
plea was void under Pennsylvania law, that the petitioner's plea
was not voluntary and knowing, and that the petitioner's counsel
was ineffective.  The claim of ineffectiveness specified sixteen
separate ways in which counsel was deficient.

The PCRA trial court filed a notice of intent to
dismiss the petition on October 21, 1999, on the ground that the
petition was filed outside the one-year statute of limitations.
The petitioner's counsel subsequently filed two supplements to
the petition arguing that it was timely filed.  On December 28,
1999, after a hearing held that day, the PCRA trial court

dismissed the petition as untimely.  The petitioner filed a
motion for reconsideration, which was denied on January 19, 2000.
The petitioner filed an appeal and the PCRA trial court issued a
memorandum opinion on February 23, 2000.  The Pennsylvania
Superior Court affirmed the dismissal of the petition as untimely
on October 30, 2000, and the Pennsylvania Supreme Court denied
allowance to appeal on June 27, 2001.


     E.   <u>The Petitioner's Second PCRA Petition</u>

     The petitioner filed a second PCRA petition, pro se, on
July 21, 2001.  The petition alleged inadequate assistance of
counsel in twenty-six particular ways, challenged the adequacy
and knowingness of the plea entered on April 11, 1991, alleged
errors by the trial court in accepting that plea and not
conducting an adequate colloquy, and challenged the jurisdiction
of the trial court to entertain a conditional plea which the
petitioner alleged was void under Pennsylvania law.

     The petitioner was then appointed new PCRA counsel.
Rather than file an amended PCRA petition, the petitioner,
through counsel, filed a motion on October 31, 2001, arguing that
the petitioner's conviction and sentence had never been made
final because the petitioner's post-sentence motion to withdraw
his plea, filed ten years before, had never been decided by the
trial court and remained pending.  The petitioner's counsel also

filed a motion to file a supplemental post-sentence motion to withdraw the plea, to provide additional grounds for allowing the withdrawal. The PCRA trial court ordered the PCRA petition deferred and held in abeyance, pending a ruling on the post-sentencing motion, but denied the petitioner's request to file a supplemental motion.

The PCRA trial court held hearings on the petitioner's motion on December 14, 2001, and February 20 and March 15, 2002. The petitioner testified at both the February 20 and March 15, 2002, hearings.

### 1. The February 20, 2002, Hearing

At the February 2002 hearing, the petitioner testified that he understood the plea that he entered on April 11, 1991, to be a conditional plea that he could withdraw if his co-defendant went to trial. He testified that he would not have entered the plea without this condition. He explained that he wanted this condition because of a statement his co-defendant had made when they were first arrested, which could have been used against him had he gone to trial. 2/20/02 N.T. at 8-9, 13.

The petitioner testified that, when he entered the plea, he believed and had been told by his counsel that the maximum sentence that he could receive was twenty years incarceration. He was questioned about the written statement

that accompanied his plea, which states that the maximum sentence he could receive was "Felony 1 - 20 years and $25,000[;] 2nd Degree Murder - life incarceration." The petitioner testified that, at the time he signed the statement, it did not contain the language of "2nd Degree Murder - life incarceration," but referred only to a 20 year term and a $25,000 fine. 2/20/02 N.T. at 10-12.

The petitioner testified that, after he learned that his co-defendant had gone to trial, he asked his counsel to withdraw his plea, both in letters and in person before the start of the October 16, 1991, sentencing. He testified that he did not want to plead guilty "in the first place" but wanted to go to trial. He also testified that both his own counsel and the prosecution counsel told him that he could withdraw his plea at a meeting that had taken place before he testified against his co-defendant. He said he never told his counsel that he wanted his plea to stand. He also reaffirmed that, as of the date of his testimony in 2002, he still wanted to withdraw his plea. 2/20/02 N.T. at 13-16.

The petitioner's trial counsel also testified at the February 22, 2002, hearing. Counsel stated that he did not recall whether the petitioner's guilty plea on April 11, 1991, included a condition that the plea could be withdrawn if his co-defendant went to trial and did not recall discussing it with the

petitioner.  He did not recall whether the plea agreement contained a condition that the petitioner would testify against his co-defendant.  2/20/02 N.T. at 31-32, 35.

The petitioner's trial counsel testified that he went over the written plea statement with the petitioner and that the statement said that the petitioner would receive a life sentence for second-degree murder.  Counsel testified that he did not recall whether the statement had originally said third-degree murder and had been crossed out, but stated that he would not have changed anything in the statement after the petitioner had signed it.  Counsel stated that he had no independent recollection of the April 19, 1991, colloquy at which he informed the court, without the petitioner being present, that the petitioner did not wish to withdraw his plea.  Counsel testified that he did not recall why he filed a post-sentence motion to withdraw the petitioner's plea, but said that it was something he would ordinarily file as a protective measure if his client had any reluctance over the plea.  2/20/02 N.T. at 25-35.

2.  <u>The March 15, 2002, Hearing</u>

The PCRA court held a second hearing on March 15, 2002, to allow the Commonwealth to present evidence of the petitioner's testimony at his co-defendant's trial.  This hearing was scheduled by the PCRA court sua sponte.  After the transcript of

that testimony was entered into evidence, the petitioner's counsel recalled the petitioner to present additional testimony. The petitioner was questioned about his testimony at trial in which he said that he had pled guilty to second degree murder and expected a sentence of life imprisonment. The petitioner reaffirmed that, at the time he entered his conditional plea on April 11, 1991, he believed that he was pleading guilty to third-degree murder for a sentence of twenty years imprisonment. He admitted that the transcript of the April 11, 1991, hearing shows the prosecution saying that his plea was to murder in the second degree, but said that he did not remember the prosecution saying that at the time because of the distraction of the courtroom. The petitioner repeated his prior testimony that, at the time he signed it on April 11, 1991, his written statement accompanying his plea stated that he was pleading to third degree murder and that the statement was subsequently altered to reflect a plea to second degree murder. 3/15/02 N.T. at 6-7, 10-11.

The petitioner testified that he only learned that he had pled guilty to second degree murder with a life sentence when he read that fact in a newspaper in late April 1991. The petitioner then wrote his counsel asking to withdraw his plea. The petitioner testified that his counsel visited him in prison in late June 1991, before his testimony in his co-defendant's trial, to discuss the withdrawal. The petitioner testified that

his counsel told him that it was not the right time to discuss withdrawing the plea, prior to his testimony.  He testified that he discussed with his counsel his belief that he had pled guilty to third degree murder, and his counsel had told him that "the District Attorney was not accepting a third degree guilty plea, that it was a second degree guilty plea."  He testified that his counsel advised him at this meeting to testify at his co-defendant's trial.  2/20/02 N.T. at 7-12.

The petitioner testified that he and his counsel met with the prosecution on the day of his testimony at his co-defendant's trial.  At that meeting, the petitioner testified that he told the prosecution that he believed that he had pled guilty to third degree murder with a maximum sentence of 20 years and that he wanted to withdraw that plea.  He testified that the prosecution told him that it was not the time to discuss withdrawal.  The petitioner also testified that the prosecution told him that, if he testified accurately, a paper would be placed in his file showing the cooperation that he had provided and that, based on this paper, he would not have to serve a life sentence.  The petitioner testified that, based on these conversations, at the time he testified at his co-defendant's trial, he understood that he was pleading guilty to second degree murder with a life sentence, but that he would not have to serve the entire sentence, and that he would have an opportunity to

withdraw his guilty plea after his testimony.  2/20/02 N.T. at 6-7, 12-16.

### 3.    The Decision

On May 9, 2002, the PCRA trial court issued an order denying the petitioner's motions to withdraw his guilty plea.  In the order, the court found that the petitioner had made both a timely pre-sentence and post-sentence motion to withdraw his plea, neither of which had ever been properly addressed or decided.  The court found the petitioner had made an oral motion to withdraw his plea at his October 16, 1991 sentencing, which the trial court had refused to entertain and never addressed on the merits, and had made a written motion to withdraw his plea after his sentencing, which was never ruled upon and, under then-current Pennsylvania law, could not be deemed denied by operation of law.  5/9/02 Order at 2-4.

The PCRA court recognized that the failure of the trial court to rule on the motions had both precluded the petitioner from filing a direct appeal and tolled the time for filing until the motion was decided.  The PCRA court also recognized that, by ruling on the petitioner's motions, it was effectively concluding his sentencing and that any appeal from its decision would effectively become the petitioner's direct appeal.  See 5/9/02 Order at 4 n.1.

The PCRA court found that, under Pennsylvania Supreme Court precedent, different standards governed pre-sentence and post-sentence requests to withdraw a plea. Pre-sentence requests should be "freely permitted" if the court finds any "fair and just reason" for withdrawal unless the prosecution has been "substantially prejudiced." 5/9/02 Order at 10 (citing Commonwealth v. Forbes, 299 A.2d 268, 299 (Pa. 1973)). Post-sentence requests to withdraw a plea should be granted only if the defendant demonstrates "manifest injustice," meaning a plea that is not tendered "knowingly, intelligently, voluntarily, and understandingly." Id. (citing Commonwealth v. Gunter, 771 A.2d 767, 770 (Pa. 2001)). The Court found that, under either standard, the petitioner was not entitled to withdraw his plea.

The PCRA court rejected the petitioner's assertion that he did not know that he was pleading guilty to second degree murder with a mandatory life sentence and that he instead believed that he was pleading guilty to third degree murder with a sentence of twenty years. The court found the petitioner's testimony to this effect not worthy of belief. The court noted that the transcript of the April 11, 1991, plea colloquy showed that several statements were made in the petitioner's presence that his plea would be to second degree murder. The court also credited the testimony of the petitioner's counsel that the written plea statement signed by the petitioner stated that the

27

petitioner was pleading guilty to second degree murder with a life sentence. The court also noted that the petitioner admitted in his testimony at the PCRA hearing that he had been told that the prosecution would not accept a plea to third degree murder. 5/9/02 Order at 11-12.

The court found that the fact that the petitioner willingly testified at his co-defendant's trial, where he said that his plea was to second degree murder with a life sentence and made no mention of an original plea to third degree murder, was inconsistent with his claim that the prosecution reneged on his original plea agreement. The court also found that the petitioner had never asserted his innocence, but instead had confirmed his guilt. For these reasons, the court found neither a fair and just reason to allow withdrawal nor manifest injustice from allowing the plea to stand. Id.

The PCRA court also found in its May 2002 Order that the petitioner had "abandoned and waived" the alleged condition to his plea that allowed him to withdraw it if his co-defendant went to trial. The petitioner had stated that he wanted this condition because he wanted to be able to avoid having his co-defendant's statements used against him in a joint trial. The court found that, in his testimony at his co-defendant's trial, the petitioner had not mentioned any condition to his plea and had testified that he entered it, not because of his co-

defendant's statements, but because of his responsibility for the crime. The court also found his testimony that he would receive a letter from the district attorney about his cooperation to be placed in his file lent credence to the finding that he had decided not to waive his plea. The court also found that "the record shows that [the petitioner] ultimately opted to let the plea stand even with the knowledge that the co-defendant would be going to trial." 5/9/02 Order at 12-13.

### 4. The Appeal

On June 7, 2002, the petitioner filed a notice of appeal from the PCRA court's decision denying his pre- and post-sentence motions to withdraw his plea. The petitioner filed a Concise Statement of the Matters Complained of on Appeal, raising five allegations of error including 1) whether the trial judge erred in refusing to entertain the petitioner's pre-sentence motion to withdraw his conditional guilty plea pursuant to its terms; 2) whether the PCRA trial judge erred in subsequently finding that the petitioner had waived and abandoned the condition to his plea agreement prior to sentencing; 3) whether the PCRA trial judge erred in not allowing the petitioner to file a supplemental post-sentence motion to withdraw his plea; 4) whether the PCRA trial judge erred in denying the petitioner's

supplemental post-sentence motion[2] to withdraw his plea;[3] and 5) whether the PCRA trial judge erred in sua sponte ordering the March 15, 2002, hearing and allowing the Commonwealth to present additional evidence.

On July 30, 2002, the PCRA trial court issued a memorandum opinion addressing the issues raised in the petitioner's Concise Statement of Issues Raised on Appeal. The PCRA court agreed with the petitioner's claim that the trial court had erred by failing to entertain the petitioner's pre-sentence motion to withdraw, but found that error had been remedied by its own May 9, 2002, ruling addressing and deciding the pre-sentence motion.

The PCRA court rejected the petitioner's claim that it had erred in denying his pre- and post-sentence motions to withdraw his plea, reaffirming and restating its reasoning in its

---

[2] The reference to the trial court denying the "supplemental" post-sentence motion appears to be an error, since the court did not allow that motion to be filed. The statement of issues complained of on appeal appears to refer to the post-sentence motion filed in 1991.

[3] The petitioner argued that it was error for the PCRA court to deny his post-sentence motion to withdraw the plea for five separate reasons, including that the petitioner's plea violated Pennsylvania law because all of its terms were not placed on the record, that the plea was not willing and voluntary because the trial court did not conduct an adequate colloquy, that the trial court failed to conduct an on-the-record colloquy to determine whether the petitioner desired to withdraw his plea after his co-defendant elected to proceed to trial; and that trial counsel was ineffective for six enumerated reasons.

May 9, 2002, Order that the petitioner's argument that he believed that he was pleading guilty to third degree murder was unsupported by the record and that the petitioner abandoned and waived his argument that he should be able to withdraw his plea if his co-defendant went to trial.

The PCRA court also rejected the petitioner's argument that it had erred in denying the petitioner's request to file a supplemental motion to withdraw, finding that the decision to allow a supplemental motion was within its discretion and finding no error in confining the petitioner to the arguments that he had originally raised.  The PCRA court also found no error in reopening the case to hold the March 15, 2002, hearing to hear additional evidence, finding that decision too to be within its discretion.

On September 19, 2003, the Pennsylvania Superior Court issued a memorandum opinion affirming the petitioner's sentence and denying his appeal.  The two-page opinion condensed the five issues raised by the petitioner into three:  1) whether the trial court erred in denying the petitioner's pre- and post-sentence motions to withdraw his guilty plea; 2) whether the trial court erred in sua sponte re-opening the Commonwealth's case regarding the request to withdraw; and 3) whether the trial court erred in denying the petitioner's request to file a supplemental motion to withdraw.  The court stated that it was adopting the reasoning of

the trial court's opinion as its own and concluded that, based on its review of the record, there was neither a "fair and just reason" nor evidence of a "manifest injustice" permitting the withdrawal of the guilty plea and adopted the reasoning of the trial court.

The petitioner filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on April 28, 2004.

### F. The Petitioner's Third PCRA Petition

#### 1. The Petition

The petitioner filed a third PCRA petition, pro se, on February 8, 2005. The petitioner was then appointed the same counsel who had represented him in his second PCRA petition. Counsel filed a motion to withdraw representation on the ground that, because she had represented the petitioner in his second PCRA proceedings, which encompassed both the conclusion of the petitioner's sentencing and his direct appeal, she suffered from a conflict of interest because it would be difficult for her to evaluate and assert any claims of ineffectiveness in her own prior representation. The PCRA court denied the motion on the

ground that the petitioner had not asserted counsel's ineffectiveness in his pro se PRCA petition.[4]

The petitioner, through counsel, filed an amended PCRA petition on July 7, 2005.[5] The petitioner asserted that his plea was constitutionally invalid because 1) his plea was involuntary because of an inadequate plea colloquy; 2) the existence of a conditional term of the plea colloquy was not placed on the record; and 3) his plea contained no admission of guilt. The petitioner also asserted that his trial counsel had been ineffective for eleven reasons:

a) for failing to place on the record during the petitioner's guilty plea colloquy the conditional term of the plea;

b) for advising the petitioner to enter the conditional guilty plea to avoid having a consolidated trial with the

---

[4] This appears to be incorrect. The petitioner's pro se third PCRA petition asserts ineffective assistance of "trial counsel" as one of the matters he intends to assert. Because the petitioner's second PCRA proceedings encompassed the final disposition of his pre- and post-sentence requests to withdraw his plea, those proceedings were part of the trial proceedings in his case and his PCRA counsel therefore acted as trial counsel in handling the second PCRA petition, as direct appeal counsel in handling the appeal of the second PCRA petition, and as PCRA counsel in handling the third PCRA petition.

[5] The amended petition is missing from the state court record. The issues raised by the petition are described in the PCRA court's rulings on the petition and in the Commonwealth's response, which are contained in the record.

petitioner and for advising him that his co-defendant's statement could be used against him, when such use is contrary to law;

c) for failing to explain to him the nature of the charge of second degree murder, the factual basis for the plea, the presumption of innocence, and possible sentences for the crime;

d) for representing to the trial court on April 17, 1991, that the petitioner did not wish to withdraw the plea and failing to demand the petitioner's presence at this colloquy;

e) for advising him to testify in his co-defendant's case where such testimony did not serve any legitimate interest of his client;

f) for advising him that even if he testified in his co-defendant's case he would be allowed to withdraw his plea per his conditional plea agreement;

g) for not challenging the delay between his April 11, 1991, plea and his October 16, 1991, sentencing which was longer than the 180 days required by Pennsylvania law;

h) for abandoning his client at his October 16, 1991, sentencing by 1) calling his client a liar when the petitioner said that he had made repeated requests to his counsel to withdraw his plea, 2) letting his client engage in a long incriminating colloquy with the trial court after the petitioner said he wished to withdraw his plea, and 3) not objecting when

the trial court instructed the prosecution to investigate possible perjury charges against the defendant;

i) for failing to assert in the post-sentence motion to withdraw the petitioner's plea specific and meritorious reasons for withdrawal, including the plea's involuntariness and the inadequacy of his colloquy and, alternatively, for failing to request the appointment of new counsel to investigate and possibly assert counsel's own inadequacy of representation;

j) for not ensuring that a final order was issued deciding the petitioner's post-sentence motion to withdraw, which delayed the litigation of this matter for ten years; and

k) for failing to discuss possible defenses including intoxication and drugged condition.

## 2. The Decision

On December 13, 2005, the PCRA trial court filed a notice of intent to dismiss the petition. The PCRA trial court rejected the petitioner's argument that his guilty plea was constitutionally invalid. It found that a challenge to the adequacy of the colloquy was foreclosed because it had been previously litigated in the proceedings on his second PCRA petition, in which the petitioner had been found to understand his plea and its consequences upon an evaluation of the totality of the circumstances. The court characterized the petitioner's

second challenge to the adequacy of his plea as relating to his claims that his written statement accompanying his plea had said, and he had understood, that he was pleading guilty to third degree murder. The court rejected this issue as previously decided. The court rejected the petitioner's argument that his plea was invalid because it contained no admission of guilt on the ground that the petitioner admitted his guilt in an interjected comment ("I still admit it") at his sentencing. As to the petitioner's claims of ineffective assistance of counsel, the court found them waived because they had not been raised earlier.[6]

---

[6] The court cited Commonwealth v. Hubbard, 372 A.2d 687, 695 (Pa. 1977), in which the Pennsylvania Supreme Court had held that a claim of ineffective assistance had to be raised at the earliest possible time in order to avoid waiver and that such a claim must therefore be raised upon the appointment of new counsel. The court recognized that the Pennsylvania Supreme Court had overruled Hubbard in Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002), holding that petitioners were not required to raise ineffective assistance claims when they obtained new counsel, but instead should generally be allowed to wait until collateral review to raise such claims. The court recognized that Grant was decided during the petitioner's de facto direct appeal (during the appeal of the decision in his second PCRA proceeding) and that the Pennsylvania Supreme Court had expressly stated that the new rule in Grant would be retroactive and apply to "cases currently pending on direct appeal where the issues of ineffectiveness have been properly raised and preserved." Id. at 739. The PCRA court found, however, that because the petitioner did not raise claims of his trial counsel's ineffectiveness in his direct appeal he had not properly "raised and preserved" those claims and therefore the old rule of Hubbard applied, and under that rule, the claims had to be raised earlier.

The petitioner, through counsel, filed objections to the PCRA court's notice of intent to dismiss. The objections particularly urged reconsideration of the finding that the petitioner had waived his arguments concerning ineffectiveness of counsel. The petitioner noted that he had sought to raise these claims in a supplemental post-sentence motion to withdraw, but had been denied permission to file it. He also noted that his counsel had sought to withdraw so that claims concerning her own ineffectiveness could be raised, but that this motion had also been denied. On January 9, 2006, after considering the objections, the PCRA trial court dismissed the petition.

3. <u>The Appeal</u>

On February 24, 2006, the petitioner filed a concise statement of the matters complained of on appeal. The statement contained seven claims of error, with numerous subparts:

1. The PCRA court erred in concluding that the petitioner's plea did not violate constitutional due process, when, among other facts, the record shows that the colloquy did not place the conditional term of the plea on the record and the colloquy did not inquire into five of the six areas required by Pennsylvania law, and when the petitioner did not admit guilt at the time of the plea.

2. The PCRA court erred in not holding a hearing on the petitioner's claims.

3. The PCRA court erred in refusing to allow the petitioner's PCRA counsel to withdraw where she had also represented the petitioner in his post-sentence and direct appeal proceedings.

4. The PCRA court erred in holding that the petitioner waived his claims of ineffective assistance of trial counsel because those claims were not raised on direct appeal.

5. The PCRA court erred in refusing to grant the petitioner leave of court to amend his PCRA petition to allow his counsel to allege her own ineffectiveness for failing to raise all instances of trial counsel's ineffectiveness on direct appeal.

6. The PCRA court erred in finding that the petitioner waived all claims of ineffective assistance of trial counsel, when in fact those issues were raised in his supplemental post-sentence motion to withdraw his guilty plea, which the court denied permission to file.

7. The petitioner's current PCRA counsel was ineffective for failing to raise on direct appeal the ineffectiveness of trial counsel in eleven different specific ways.

The PCRA trial court responded to the claims raised in the statement of issues for appeal in a memorandum opinion entered on March 20, 2006.  The PCRA trial court noted that proceedings under the PCRA are intended to provide relief to persons convicted of crimes that they did not commit, but that here the petitioner had testified under oath at his co-defendant's trial that he had shot the victim and that he had pled guilty to second degree murder because he had committed that crime.  The PCRA trial court expressed its belief that to grant the petitioner's petition after this testimony would "hold this Court to public ridicule and the judicial system as a whole totally impervious to reality."  3/20/06 Memorandum at 8.  The court therefore requested that the appellate court uphold its decision to dismiss the petition for the reasons stated in its dismissal order.

The Pennsylvania Superior Court affirmed the trial court's dismissal of the petition in a non-precedential decision issued December 1, 2006.  The Superior Court rejected the petitioner's claim that the PCRA trial court erred in denying petitioner's counsel's request to withdraw to allege her own ineffectiveness, finding that those claims were "without any support from the record or evidence" and "clearly meritless." The Superior Court rejected the petitioner's claim that the trial court erred in not holding a hearing on his claim that his plea

was unlawfully induced, finding that to make such a claim a petitioner must plead and prove circumstances that make it likely that he is innocent, which he did not do.

With respect to the petitioner's ineffective assistance claims, the Superior Court found that the petitioner's claims of ineffective assistance of his trial counsel had been previously raised and decided in the proceedings on his second PCRA petition. The Superior Court found that, although the petitioner was not granted permission to file a supplemental post-sentence motion to withdraw his plea, which would have raised those ineffective assistance claims, the underlying merit of some of those claims were nonetheless considered by the PCRA trial and appellate courts. The Superior Court therefore held that the petitioner could not re-litigate those claims.

With respect to the petitioner's ineffective assistance claims concerning his direct appeal counsel (who was also representing him in his PCRA proceedings), alleging that appeal counsel had failed to preserve several claims concerning the ineffective assistance of trial counsel, the Superior Court found that those claims had not been previously litigated and were not waived. The Superior Court held that to succeed on such claims, however, the petitioner had to plead and prove that the claimed ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could take place."

The court found that none of these ineffective assistance claims addressed the truth determining process or related to the validity of the petitioner's plea or sentence.

After the Superior Court decision, the petitioner filed a petition for allowance of appeal with the Pennsylvania Supreme Court. This petition was initially granted, but was subsequently dismissed on July 21, 2008, without explanation, as improvidently granted.

G.    The Petition for Writ of Habeas Corpus

The petitioner filed this petition for writ of habeas corpus, pro se, on September 2, 2008. The petition was referred to Magistrate Judge Carol Sandra Moore Wells for a report and recommendation.

The respondents' initial answer to the petition argued that the petition was time-barred. Magistrate Judge Wells issued a report and recommendation on November 25, 2008, adopting the respondent's reasoning and recommending that the petition be dismissed as untimely. The petitioner filed objections to the report and recommendation, raising a new factual issue concerning the timeliness of the petition. The Court remanded the report and recommendation to Judge Wells to consider the matter raised in the objections. Judge Wells subsequently vacated the report

and recommendation and directed the respondents to file an amended answer addressing the merits of the petition.

After receiving the respondents' amended answer, Judge Wells issued a second report and recommendation on March 9, 2009, recommending that the petition be dismissed. The petitioner has filed timely objections.

In evaluating the petition in her report and recommendation, Magistrate Judge Wells organized the claims of the petition into four broad grounds for relief, each with numerous subparts. In his objections to the report and recommendation, the petitioner does not object to this organization and the Court adopts it here.

Ground One of the habeas petition alleges ineffective assistance of counsel:

1.1  By advising the petitioner to enter a conditional guilty plea, which is invalid in Pennsylvania;

1.2  By failing to enter on the record the conditional terms of the petitioner's plea;

1.3  By failing to insure that the trial court conducted an adequate colloquy to record the conditional terms of the plea;

1.4  By advising the petitioner to plead guilty to avoid a joint trial with his co-defendant, so that his co-defendant's statements could not be used against him;

1.5  By advising the trial court on April 19, 1991 (in the petitioner's absence and without his authorization), that the petitioner did not wish to withdraw his guilty plea even though the condition of his plea had not been satisfied;

1.6  By failing to file a pre-sentence motion to withdraw the guilty plea despite the petitioner's numerous requests that he do so.

1.7  By advising the petitioner to testify against his co-defendant;

1.8  By abandoning the petitioner at his sentencing by failing to advise him not to answer the trial court's questioning concerning the crime after the petitioner stated that he wished to withdraw his plea;

1.9  By failing to seek a continuance of the petitioner's sentencing to allow him to fil a formal pre-sentence motion to withdraw his plea;

1.10 By failing to object to the court's jurisdiction to sentence the petitioner after more than six months had passed from the time of the guilty plea to sentencing;

1.11 By failing to investigate or pursue a diminished capacity defense;

1.12 By failing to explain in the post-sentence motion to withdraw the guilty plea the precise reasons why the court should allow the petitioner to withdraw his plea.

1.13 By failing to take steps to see that the petitioner's post-sentence motion was disposed of in a timely manner with an order to memorialize the denial so that the petitioner could pursue a timely direct appeal.

Ground Two alleges errors by the trial court:

2.1  In accepting a conditional guilty plea, which is invalid in Pennsylvania;

2.2  By failing to place the terms of the petitioner's conditional guilty plea in the record even though the court knew those conditions;

2.3  By failing to conduct an adequate colloquy to determine whether the petitioner's plea was knowing and voluntary;

2.4  By conducting a colloquy on April 19, 1991, concerning whether the petitioner wished to withdraw his guilty plea without the petitioner being present;

2.5  By accepting a conditional guilty plea when the court knew the petitioner had reservations about pleading guilty and kept the record open so that the petitioner could request to withdraw the plea;

2.6  By failing to learn from the petitioner whether, once the condition for his plea was not satisfied, the petitioner wished to withdraw his plea;

2.7  By failing to entertain the petitioner's oral pre-sentence request to withdraw his conditional guilty plea;

2.8  By failing to resolve at the sentencing hearing whether the petitioner had asked his counsel to file a pre-sentence motion to withdraw the conditional guilty plea; and

2.9  By failing to rule on the petitioner's post-sentence motion to withdraw his guilty plea, which was left unresolved for over eleven years.

Ground Three alleges errors by the Pennsylvania Superior Court on direct appeal:

3.1  By concluding that the petitioner had waived any conditions placed on his conditional guilty plea;

3.2  By concluding that the petitioner's guilty plea was knowing and voluntary despite the absence of a plea colloquy with the petitioner;

3.3  By concluding that the petitioner was not entitled to file a supplemental post-sentence motion to raise ineffective assistance of counsel claims even though the petitioner had new counsel after his guilty plea;

3.4  By concluding that the Commonwealth could reopen its case and could be told what evidence and testimony was needed, despite the Commonwealth's failure to request that the case be reopened or to request leave to present additional evidence; and

3.5  By concluding that the inordinate delay of eleven years to resolve the petitioner's post-sentence motion did not prejudice the petitioner.

Ground Four alleges errors by the PCRA Court:

4.1  In concluding that the petitioner was not entitled to PCRA relief because he could not establish his innocence;

4.2  In concluding that the petitioner had to raise direct appellate counsel's ineffective assistance, pro se, before the petitioner was entitled to new counsel;

4.3  In concluding that PCRA counsel should not be allowed to withdraw on the grounds that she had previously represented the petitioner at his post-sentence motion hearing and on direct appeal; and

4.4  In concluding that the petitioner was not entitled to a full and fair hearing on all of his claims concerning ineffective assistance by conditional plea counsel and whether the petitioner entered a knowing and voluntary conditional guilty plea.


II.  ANALYSIS

The Court will first consider which, if any, of the petitioner's claims are time-barred, procedurally defaulted, or non-cognizable in habeas and then turn to considering the merits of the remaining claims.

A.   The Timeliness of the Petition

     The Court finds that the petitioner's habeas claims are
timely.  Under the Antiterrorism and Effective Death Penalty Act
("AEDPA"), 110 Stat. 1214, a habeas petition must be filed within
one year of the later of:  the judgment becoming final; the
removal of an impediment to filing created by unconstitutional or
illegal state action; the recognition by the Supreme Court of a
new and retroactive constitutional right; or the discovery of a
factual predicate of a claim which could not have been previously
discovered through due diligence.  28 U.S.C. § 2244(d)(1).  The
petitioner does not allege any illegal impediment, new
constitutional rule, or newly discovered evidence, and therefore
the one-year period to file his habeas petition began when his
judgment of conviction became final.

     Under AEDPA, a judgment becomes final at the conclusion
of direct review or the expiration of the time for seeking such
review.  § 2244(d)(1)(A).  Here the petitioner's conviction
became final only after the expiration of the proceedings
concerning his second PCRA petition, in which the PCRA court
ruled on his pending pre- and post-sentence motions.  That
petition was denied on May 9, 2002; the Pennsylvania Superior
Court affirmed on September 19, 2003; and the Pennsylvania
Supreme Court denied the petition for allowance of appeal on
April 28, 2004.  The petitioner's conviction therefore became

final ninety days later, on or about July 27, 2004, when the time
for filing a petition for certiorari to the United States Supreme
Court expired.

Absent tolling, the one-year deadline would, therefore,
have been July 27, 2005, and the petition here, filed September
2, 2008, would have been untimely.  Under AEDPA, however, the
time limit for filing a habeas petition is tolled during the time
in which a properly-filed application for state post-conviction
or other collateral review is pending.  § 2244(d)(2).  The
petitioner filed his third PCRA petition on February 8, 2005, and
the Pennsylvania Supreme Court dismissed his petition for
allowance of appeal on July 21, 2008.  Because the one-year
period was suspended during the pendency of the PCRA proceedings,
the petitioner's habeas petition is timely, with the one-year
clock having run for only one hundred and ninety six days between
July 27, 2004, and February 8, 2005, and forty-three days between
July 21, 2008, and September 2, 2008.[7]

---

[7]     In their initial answer to the habeas petition, the
respondents argued that the petitioner was not entitled to
tolling for the entire time that his third PCRA petition was
pending because he did not timely file his petition for allowance
of appeal to the Pennsylvania Supreme Court.  The Pennsylvania
Superior Court denied the petitioner's appeal concerning his
third PCRA complaint on December 1, 2006.  The petitioner had
thirty days to file a petition requesting allowance of appeal.
That thirty day period expired December 31, 2006.
        Because December 31, 2006, was a Sunday and January 1,
2007, was a federal holiday, the respondents contended that the
petitioner was required to file his petition for allowance of
appeal by January 2, 2007.  The petitioner filed the petition on

B.    Procedural Default

Before a petitioner can obtain habeas review of a claim, he must first exhaust his state court remedies.  28 U.S.C. § 2254(b)(1)(A).  To do so, a petitioner must have presented that claim to each level of the state courts.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

1.    Exhaustion of Claims in Ground One

As to Ground One of the petition, raising thirteen ineffective assistance claims, the Court finds that all of the

---

January 3, 2007.  The respondents contended that because the petition for allowance of appeal was untimely, the time that the petition was pending from January 3, 2007, through its dismissal on July 21, 2008, did not toll the one-year habeas statute of limitations, making the habeas petition untimely.  This position was adopted by Judge Wells in her first report and recommendation.  In his opposition to the report and recommendation, the petitioner (for the first time) asserted that he could not have filed his petition for allowance of appeal on January 2, 2007, because that day was also a federal holiday.

Upon consideration of the petitioner's objections, Judge Wells vacated her first report and recommendation and, in her second report and recommendation, found the petitioner's claims timely.  The Court agrees.  By executive order, President Bush declared January 2, 2007, a federal holiday and closed "all executive departments, independent organizations and other agencies" in commemoration of the death of former President Gerald R. Ford.  See Exec. Order No. 13,421, 72 Fed. Reg. 425 (December 28, 2006).  Because federal offices were closed, the petition for allowance of appeal to the Pennsylvania Supreme Court need not have been filed until January 3, 2007.  1 Pa. Cons. Stat. Ann. § 1908 (the computation of the last day of a time period excludes Saturday, Sunday and federal and state holidays).  Because the petition for allowance of appeal was timely filed, the habeas statute of limitations was tolled while that petition was pending, making the habeas petition timely.

claims except one, claim 1.9, were presented to the state courts and have been properly exhausted.

The petitioner raised claims 1.1, 1.5, 1.6, 1.7, 1.8, 1.10, and 1.11 in his initial PCRA petition and raised claims 1.1, 1.2, 1.3, 1.4, 1.5, 1.7, 1.8, 1.10, 1.12, and 1.13 in his third and last PCRA petition.[8]  In addition, the Pennsylvania Superior Court held that several ineffective assistance claims were considered on the merits in the petitioner's second PCRA proceedings, even though they were not formally filed.

In the petitioner's second PCRA proceedings, the petitioner sought leave to file a post-sentence motion, which would have included ineffective assistance claims corresponding to some of those raised in Ground One of his habeas petition. The PCRA trial court denied the request.  In subsequent proceedings, the Pennsylvania Superior Court, ruling on the appeal of the denial of the third petition, found that the "underlying merit" of several of the issues raised in the never-filed, post-sentence motion, corresponding to claims 1.1, 1.2, 1.3, 1.4, 1.5, and 1.12 here, had nonetheless been considered by the PCRA trial court.  The Superior Court found that these claims had therefore been "finally litigated" and could not be raised in

---

[8]     The petitioner also raised claims 1.3 and 1.9 in his initial PCRA petition, but failed to include these claims in his appeal of the denial of that petition.  These claims were therefore not exhausted in the first petition, but claim 1.3 was subsequently exhausted in the third PCRA petition.

the petitioner's third PCRA petition.  The Superior Court also found that certain ineffective assistance claims had not been previously litigated, but were properly dismissed because the petitioner could not show that they undermined the truth-determining process to such extent that no reliable adjudication of guilt or innocence could take place.  These claims correspond to claims 1.7, 1.8, and 1.13.

All of the petitioner's claims in Ground One except claim 1.9 have been procedurally exhausted.  The ten claims raised in the petitioner's third PCRA petition (1.1 through 1.5, 1.7, 1.8, 1.10, 1.12, and 1.13) are exhausted because they were raised in the petitioner's state collateral proceedings at both the trial and appellate level.  Claims 1.6, and 1.11 were raised in the petitioner's first PCRA petition and raised on appeal of the denial of that petition and are therefore also properly exhausted.  The fact that the petitioner's first PCRA petition was dismissed as time-barred does not prevent those claims from being considered exhausted because the finding of untimeliness was subsequently mooted by the decision in the petitioner's second PCRA proceedings, finding that his timely pre- and post-sentence motions had never been decided.  In addition, claims 1.1, 1.2, 1.3, 1.5, and 1.12 must also be considered to have been procedurally exhausted based on the Pennsylvania Superior Court's

ruling in the third PCRA proceeding that those claims had been "finally litigated."

## 2. Exhaustion of Claims in Ground Two

As to Ground Two, alleging nine separate errors by the trial court, the Court finds that five are properly exhausted: claims 2.1, 2.2, 2.3. 2.5, and 2.7.

Claims 2.2 and 2.5 were raised in the third PCRA petition at both the trial and appellate levels. Claim 2.7 was raised in the petitioner's direct appeal (as part of his second PCRA proceedings).

Claim 2.1 alleges that the trial court erred in accepting a conditional plea which the petitioner contends is void in Pennsylvania. The petitioner raised this issue in his first PCRA petition, which argued that the trial court "did not have jurisdiction to sentence him . . . [because] a conditional guilty plea is void in Pennsylvania," and also included the issue in his appeal of the denial of that petition. 10/6/99 Amended PCRA Mot. at ¶ 27; 2/24/00 Statement of Issues on Appeal at ¶ 17.

Claim 2.3 alleges that the trial court erred in failing to conduct an adequate plea colloquy. The petitioner raised this issue in his third PCRA petition, which alleged that his plea was invalid because the trial court's plea colloquy was inadequate, and preserved it on appeal, alleging that the PCRA court erred in

finding that his plea did not violate constitutional due process where the trial judge failed to inquire into five of the six mandatory areas that Pennsylvania law requires be covered in a plea colloquy.[9]

The remaining claims, 2.4, 2.6, 2.8, and 2.9, were not raised in the petitioner's state court proceedings and are procedurally defaulted.

### 3.    Exhaustion of Claims in Ground Three

As to Ground Three, raising claims of error by the direct appeal court, the Court finds that four have been properly exhausted:  3.1, 3.2, 3.3, and 3.4.   These claims were all raised in the petitioner's direct appeal (which took place during his second PCRA proceedings).  The fifth claim in Ground Three, claim 3.5, claiming error and prejudice from the delay in resolving the petitioner's post-sentence motion to withdraw his plea, was not raised in state court, either in direct appeal or subsequent PCRA proceedings, and it is, therefore, not exhausted.

---

[9]    These are the nature of the charges, the factual basis for the plea, the right to a jury, the presumption of innocence, the range of possible sentences, and the right of the judge not to accept the plea.  See Comment to Pa. R. Crim P. 319 (2000) (citing Commonwealth v. Willis, 369 A.2d 1189 (Pa. 1977)).

4. <u>Exhaustion of Claims in Ground Four</u>

The four claims in Ground Four allege errors by the PCRA trial court. Two of them, claims 4.3 and 4.4, are properly exhausted. These claims were raised in the petitioner's appeal from the denial of his third PCRA petition. The two remaining claims, claims 4.1 and 4.2, were not raised in state court proceedings and have not been properly exhausted.

5. <u>Excuse for Procedurally Defaulted Claims</u>

The Court has found that the petitioner failed to exhaust claims 1.9, 2.4, 2.6, 2.8, 2.9, 3.5, 4.1, and 4.2. The petitioner can no longer cure this failure to exhaust because the one-year limitations period for bringing a claim under the PCRA has elapsed. These claims are therefore procedurally defaulted and, because this default is based on a state procedural law that is independent of the federal question and adequate to support the judgment, that default will bar habeas review unless it can be excused. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 732, 749-50 (1991).

Procedural default can be excused where a petitioner shows cause for the default and actual prejudice or demonstrates that failure to consider the claims would result in a fundamental miscarriage of justice. <u>Coleman</u> at 750. The petitioner has not attempted to make such a showing with respect to these claims,

and the procedural default is therefore not excused.  Claims 1.9, 2.4, 2.6, 2.8, 2.9, 3.5, 4.1, and 4.2 of the petition must therefore be dismissed.

    C.   <u>Cognizability</u>

      Certain types of claims cannot be reviewed through a writ of habeas corpus.  Such claims are often referred to as non-cognizable claims.  Here, the Court finds that claim 2.1, claims 3.3 and 3.4, and all of the claims in Ground Four are non-cognizable and must be dismissed.  The Court will address its reasoning concerning these claims in reverse order.

      Federal habeas relief may not be sought to review alleged errors of state law:  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions . . . a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  Federal habeas relief is also unavailable to correct errors in state PCRA proceedings that do not affect the petitioner's conviction:  "[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas

calculation." Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998).

The petitioner's claims in Ground Four all challenge the actions of the state PCRA court during his post-conviction collateral proceedings. The two claims in Ground Four that are not procedurally defaulted are claim 4.3, in which the petitioner contends that the PCRA court erred in not allowing the his PCRA counsel to withdraw and claim 4.4, in which he alleges that the PCRA court erred in concluding that he was not entitled to a full and fair hearing on his claims of ineffective assistance and his claims of an unknowing and involuntary plea. Because both of these claims concern alleged errors in the petitioner's collateral proceedings, they do not concern errors that led to the petitioner's conviction and so do not "enter into the habeas calculation" and cannot be the subject of habeas relief. See, e.g., Smith v. Cameron, 2009 WL 398601 ay *5 (E.D. Pa. Feb. 18, 2009) ("[T]here can be no constitutional claim based upon the state court's refusal to conduct an evidentiary hearing in a postconviction proceeding"). Claims 4.3 and 4.4 will therefore be dismissed as non-cognizable.

Claims 3.3 and 3.4 allege errors by the Pennsylvania Superior Court on direct appeal in upholding the trial court's decision not to allow the petitioner to file a supplemental post-sentence motion to withdraw his plea, and to allow, sua sponte,

the Commonwealth to reopen its case to present additional evidence opposing the request to withdraw. Both of these claims concern errors in how the state court applied state procedural rules, and are therefore not cognizable in habeas.

For similar reasons, claim 2.1 is also non-cognizable. In claim 2.1, the petitioner alleges that the trial court erred in accepting a conditional guilty plea, which the petitioner contends is invalid under Pennsylvania law. The report and recommendation noted that the petitioner provided no authority for the proposition that conditional guilty pleas are not allowed under Pennsylvania law. In his opposition, the petitioner cites two Pennsylvania cases: <u>Commonwealth v. Terreforte</u>, 564 A.2d 479, 482-83 (Pa. Super. Ct. 1989), <u>rev'd</u> 587 A.2d 309 (Pa. Mar 20, 1991), and <u>Commonwealth v. Thomas</u>, 506 A.2d 420, 424 (Pa. Super. Ct. 1986).

The Court does not believe that either <u>Terreforte</u> or <u>Thomas</u> support the petitioner's contention that his conditional guilty plea violated Pennsylvania law.[10] That issue, however, is

_____

[10]     Both <u>Terreforte</u> and <u>Thomas</u> concern defendants who entered pleas of guilty or nolo contendere in the incorrect belief that they would still be able to appeal certain non-jurisdictional pre-trial rulings. In <u>Terreforte</u>, the defendant's plea was expressly conditioned on his being able to assert a pre-trial issue on appeal. The Pennsylvania Superior Court, in the decision cited by the petitioner, held that, despite the condition, the entry of the plea had extinguished the defendant's appeal right, and that, because the defendant entered the plea in reliance on the condition, his plea was involuntarily induced and his counsel ineffective for allowing him to enter the plea. 564

not one that properly can be considered on a petition for writ of habeas corpus.  On habeas review, a federal court may consider only whether a conviction violates the United States Constitution or federal law and may not "reexamine state-court determinations on state-law questions."  Estelle, 502 U.S. at 67.  As addressed below, however, the Court will consider the petitioner's claim of ineffective assistance, a constitutional claim, related to his counsel's advice to enter the conditional plea.

---

A.2d at 482-83.  This decision was subsequently reversed in a one-sentence order by the Pennsylvania Supreme Court, which remanded the case with an instruction for the Pennsylvania Superior Court to review the appeal issue that it had found waived.  587 A.2d 309.  In Thomas, the court found that a defendant's counsel was ineffective for allowing his client to enter a nolo contendere plea in the mistaken belief that he could still appeal adverse pre-trial rulings. 506 A.2d at 424.

Having been reversed, Terreforte cannot be relied upon as a statement of Pennsylvania law.  Moreover, in both Thomas and Terreforte the condition to each defendant's guilty plea was beyond the power of the trial court to honor.  As a matter of law, the defendants' appellate rights were extinguished upon entry of the plea regardless of any condition.  See Thomas, 506 A.2d at 424.  Allowing a defendant to enter such a plea was error because the condition was, in essence, illusory and could never be fulfilled.  In the petitioner's case, however, the alleged condition to his plea, allowing him to withdraw it if his co-defendant went to trial, was within the power of the trial court to grant.  See Commonwealth v. Forbes, 299 A.2d 268, 271 (Pa. 1973).  The petitioner's conditional guilty plea, unlike Terreforte and Thomas, was not invalid on its face.

Neither Terreforte nor Thomas, therefore, establishes that the petitioner's conditional plea was necessarily invalid; conversely, those cases also do not establish the validity of the plea.  Even if it were proper for the Court to address the issue, the Court does not have enough information to decide it.

D.    <u>Review of the Remaining Claims on the Merits</u>

The remaining claims of the petition that are neither procedurally defaulted nor non-cognizable will be reviewed on the merits.  These claims are claims 1.1-1.8, 1.10-1.13, 2.2-2.3, 2.5, 2.7, 3.1, and 3.2.

Under AEDPA, a federal court's habeas review of the merits of a state court's decision is greatly circumscribed.  The statute provides that a habeas petition shall not be granted "with respect to any claim that was adjudicated on the merits in State court" unless the adjudication of the claim either:

1)    resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), a state court decision will be "contrary to" established federal law if it reaches a conclusion opposite to that reached by the United States Supreme Court on a question of law or when confronted with facts that are materially indistinguishable from a relevant Supreme Court precedent.  <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).  A state court decision will be an "unreasonable application" of federal law "if the state court identifies the correct governing legal rule from

59

the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407-08. In making this determination, a district court must find that a state court acted not just incorrectly, but unreasonably. Renico v. Lett, 130 S. Ct. 1855, 1862 (U.S. 2010).

Under § 2254(d)(2), a federal habeas court may grant relief if it determines that the state court's factual determinations were unreasonable given the totality of the evidence presented. Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir. 2004). A state court's factual determination cannot be found to be unreasonable merely because the federal habeas court would reach a different conclusion if it were deciding the issue in the first instance. Wood v. Allen, 130 S. Ct. 841, 850 (U.S. 2010).

In addition, a separate provision of AEDPA requires that a federal habeas court give deference to the state court's factual findings. Under § 2254(e)(1), a federal court must presume that a state court's determination of a factual issue is correct, and a petitioner has the burden of rebutting this presumption by clear and convincing evidence. The presumption of

§ 2254(e) applies to individual factual determinations that are subsidiary to the state court's ultimate determination, which must be assessed under the "overarching standard of § 2254(d)(2)." <u>Lambert</u>, 387 F.3d at 235-36. Because § 2254(e) and § 2254(d)(2) express the same fundamental principle of deference to state court findings, a federal habeas court can analyze the application of the two statutes in either order, but can only grant habeas relief if § 2254(d)(2) is satisfied. <u>Id.</u>, 387 F.3d at 236 n.19.

In reviewing the merits of the petitioner's remaining claims, the Court will do so out of order, addressing first the petitioner's claims of errors on the part of the trial court and direct appeals court and then turning to the petitioner's ineffective assistance claims.

### 1.  Claims of Error in Grounds Two and Three

Grounds two and three of the habeas petition challenge errors by the state trial court and direct appeals court, respectively, in accepting the petitioner's guilty plea and refusing to allow it to be withdrawn.

To be constitutionally valid, a guilty plea must be entered knowingly and voluntarily. <u>Boykin v. Alabama</u>, 395 U.S. 238, 243-44 (1969). A trial court therefore must "make sure [the accused] has a full understanding of what the plea connotes and

of its consequence" and must "leave[ ] a record adequate for any review that may later be sought."  Id. at 244.

In addition, a guilty plea necessarily involves the waiver of three important constitutional rights:  the right against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers.  Boykin, 395 U.S. at 243.  For the waiver of these rights to be constitutionally valid, it must be intentional and knowing, and a court cannot presume waiver of these rights "from a silent record."  Id.  A waiver of rights is "knowing, intelligent, and sufficiently aware" if the defendant "fully understands the nature of the right and how it would likely apply in general in the circumstances - even though the defendant may not know the specific detailed consequences of invoking it."  U.S. v. Ruiz, 536 U.S. 622, 629 (2002).

Although the United States Court of Appeals for the Third Circuit has said that there are "few hard and fast rules" for establishing a knowing and voluntary waiver of rights, it has emphasized that "'no criminal defendant should plead guilty to a crime unless, and until, he has had explained to him and understands all of his constitutional rights and protections.'" Taylor v. Horn, 504 F.3d 416, 440 (3d Cir. 2007) (quoting Hill v. Beyer, 62 F.3d 474, 480 (3d Cir. 1995)).  This, however, does not require a mandatory litany of rights, and a trial court's failure

to advise a defendant of each right does not automatically invalidate the plea.  <u>U.S. v. Stewart</u>, 977 F.2d 81, 84 (3d Cir. 1992).  A petitioner bears the burden of showing that his plea was neither voluntary nor intelligent.  <u>Hill v. Beyer</u>, 62 F.3d 474, 481 (3d Cir. 1995).  Yet, absent an adequate record to determine that a guilty plea is a knowing, voluntary and intelligent waiver, "a reviewing court can not conclude that the guilty plea complied with constitutional safeguards."  <u>Jamison v. Klem</u>, 544 F.3d 266, 274 (3d Cir. 2008).

A failure to mention specific rights in a colloquy will not be fatal to a plea where "circumstances otherwise establish that the plea was constitutionally adequate."  <u>Hill</u>, 62 F.3d at 482.  Nonetheless, a transcript showing "full compliance with the customary inquiries and admonitions" is "strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences."  <u>Stewart</u>, 977 F.2d at 85.

### a.  <u>Claims 2.3 and 3.2</u>

Claim 2.3 challenges the alleged failure of the trial court to conduct an adequate colloquy to determine if the petitioner's plea was knowing and voluntary.  Claim 3.2 alleges that the state direct appeal court committed error by concluding that the petitioner's guilty plea was knowing and voluntary

63

despite the absence of a plea colloquy.  Although the Court finds that both claims present a close question, it concludes that neither claim is meritorious.

The petitioner raised both claims in his third PCRA petition, in which he argued that his plea was unlawfully induced because of an inadequate plea colloquy.  On PCRA review, the Pennsylvania Superior Court affirmed the dismissal of these claims on the ground that the petitioner had not pled or proved that he was likely to be innocent.  12/1/06 App. Opinion at 7.  The requirement that a defendant establish a likelihood of innocence in order to prove the invalidity of a plea is a substantive requirement imposed by Pennsylvania statute.  42 Pa. Cons. Stat. § 9543(a)(2)(iii).  The standard for assessing the voluntariness of a plea on habeas review, however, is set by federal law and does not require a showing of likely innocence.  <u>Villot v. Varner</u>, 373 F.3d 327, 329, 335 (3d Cir. 2004).  The Superior Court's ruling is therefore not entitled to deference under 28 U.S.C. § 2254(d)(1) because it is not based on established federal law.

The PCRA trial court reviewing these claims, however, rested its dismissal of these claims on different grounds.  In its March 20, 2006, opinion, the PCRA trial court held that the claims should be dismissed both because the petitioner had not established a likelihood of innocence and for reasons previously

given in its December 13, 2005, notice of intent to dismiss the PCRA petition.  The December 2005 notice of intent addressed the merits of the petitioner's claim that his plea was involuntary and applied the federal constitutional standard for determining voluntariness that a plea be shown to be both intelligent and knowing.  12/13/05 Op. at 7 (citing <u>Commonwealth v. Rodgers</u>, 350 A. 2d 815, 817 (Pa. 1976) (citing <u>Boykin</u>, 395 U.S. at 244)).

In the December 2005 notice, the PCRA trial court looked beyond the colloquy to the totality of the circumstances surrounding the plea.  The court relied on the findings in its July 30, 2002, Order disposing of the petitioner's second PCRA petition, in which it had found that the petitioner understood that he was pleading guilty to second degree murder with a life sentence and understood why he was before the court and the significance of his plea.  Although the court noted that the petitioner did not admit his guilt at the April 11, 1991 colloquy, it found that he had done so at his sentencing in October 16, 1991, when, in response to the prosecution's statement that he had admitted his guilt in testimony at his co-defendant's trial, the petitioner interjected that "I still admit it."  Based on these findings, the PCRA trial court found that the circumstances surrounding the plea showed that it was knowing and voluntary.

The Court will apply the AEDPA standards of deference to the PCRA trial court decision.[11]  Under § 2254(d)(1), habeas relief can be granted if the state court decision is "contrary to" established federal law or an objectively "unreasonable application" federal law.  The first prong of § 2254(d)(1) is not satisfied here because the PCRA trial court applied the proper constitutional standard for voluntariness set out in Boykin, 395 U.S. 238.  It is not as clear, however, whether the PCRA trial court decision satisfies the second prong of § 2254(d)(1).

To be "unreasonable," a decision must be more than just an incorrect application of federal law.  This prong of AEDPA is not satisfied merely "because a court concludes in its

_____

[11]   It is not entirely clear whether AEDPA deference applies to the PCRA trial court decision.  The United States Court of Appeals for the Third Circuit has suggested that AEDPA deference applies to the "highest substantive state court decision addressing the issue."  Fountain v. Kyler, 420 F.3d 267 (3d Pa. 2007).  Here, the highest state court decision was that of the Pennsylvania Superior Court, which dismissed the claim for lack of a showing of likely innocence.  The requirement of likely innocence is a substantive requirement.  Villot, 373 F.3d at 335. Fountain, however, involved a state appellate ruling that applied the relevant federal constitutional standard and which was therefore owed AEDPA deference.  It is not clear from Fountain whether a federal court should give AEDPA deference to a lower PCRA court opinion on the constitutional merits, when the affirming appellate opinion rests on narrower state substantive grounds.  Given the language of AEDPA requiring deference to a claim "adjudicated on the merits," the Court will give AEDPA deference to the PCRA trial court opinion.  The Court notes that even if it did not give AEPA deference to this decision, it would still presume as true the factual findings upon which it rests because the petitioner has not rebutted them with clear and convincing evidence.  § 2254(e)(1).

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"; the decision must be "objectively unreasonable." Renico, 130 S. Ct. at 1862 (quoting Williams v. Taylor, 529 U.S. 362, 409, 411 (2000)).

Here, the Court accepts the PCRA court's factual findings that the petitioner understood the nature of the charges to which he was pleading guilty and understood that he was pleading guilty to second degree murder with a mandatory life sentence. The Court also accepts the PCRA court's finding that the petitioner understood the factual basis for his plea. These findings, however, are not enough to show that the petitioner's plea was knowing and voluntary. There also must be a knowing and voluntary waiver of the accused's constitutional rights. Ruiz, 536 U.S. at 629; Boykin, 395 U.S. at 243; Hill, 62 F.3d at 480.

The PCRA court, however, did not address and made no finding as to whether the petitioner knew and understood the rights that he was waiving by entering his plea. A finding that the petitioner's waiver of rights was voluntary and knowing was a necessary element of any decision upholding the validity of the petitioner's plea. Such a finding could not be presumed. The PCRA trial court's decision to find the plea knowing and

voluntary without addressing the petitioner's waiver of his rights would therefore appear to be objectively unreasonable.[12]

Because the PCRA trial court's ultimate finding that the plea was knowing and voluntary was not objectively reasonable, the Court will not defer to this conclusion, but will instead consider that issue on its merits. In doing so, the Court will consider de novo whether the petitioner knew and understood the rights he was waiving, the central issue left unaddressed by the PCRA court. Pursuant to § 2254(e)(1), however, the Court will defer to the PCRA trial court's factual findings concerning other aspects of the plea, including its findings that the petitioner understood the nature of the charges to which he pled and their factual basis.

The Court cannot find that the petitioner's plea was knowing and voluntary based on the colloquy it conducted on April

---

[12]     The trial court's April 11, 1991, colloquy also fails to place on the record the condition of the petitioner's plea, allowing him to withdraw it if his co-defendant pled guilty. This condition is unmentioned in both the oral plea colloquy and the written statement accompanying the plea. The Court does not find, however, that the failure to mention the plea condition is sufficient to make the plea constitutionally invalid. The terms of the plea condition were set out on the record in a subsequent April 19, 1991, hearing held between the trial court and counsel. More importantly, neither the petitioner nor the government contends that the petitioner, the government, or the trial court, was unaware of the existence of the plea or disagreed about its terms. Given that the court and the parties understood that the plea was subject to a condition and agreed on its terms, the Court does not find that the failure to mention the condition during the April 11, 1991, hearing rendered the colloquy constitutionally inadequate.

11, 1991.  The transcript of that colloquy shows that the trial court did not inform the petitioner of his right against self incrimination, his right to a jury trial, or his right to be presumed innocent, or inform the petitioner that those rights would be waived by his plea of guilty.

Despite the inadequacy of the colloquy, the petitioner's plea can still be found to be knowing and voluntary if "circumstances otherwise establish that the plea was constitutionally adequate."  Hill, 62 F.3d at 482.  These circumstances can take the form of a petitioner's prior exposure to the criminal justice system.  See, e.g., Stewart, 977 F.2d at 84 (holding, for purposes of determining the validity of a prior state court conviction in order to calculate a federal sentence, that a plea was valid, even though the plea colloquy did not discuss the waiver of the defendant's constitutional rights, where the defendant had the benefit of an extensive plea colloquy in another case six weeks before).  A court may also consider testimony as to whether counsel informed the petitioner of his rights.  See Hill, 62 F.3d at 482-83.

Here, the Court finds that the written statement and questionnaire that the petitioner completed to accompany his plea, coupled with the evidence that the petitioner discussed the statement with his counsel, is sufficient to establish that the petitioner was adequately informed of his rights before his plea

and knowingly and voluntarily waived them.  The statement set out in detail the rights that the petitioner would be waiving by entering his plea, including the right to be presumed innocent and to remain silent, the right to a trial by jury and an appeal, and the right to confront the witnesses against him and to testify and present witnesses on his own behalf.

The text of the statement asked whether the petitioner understood these rights and whether he understood that, by pleading guilty, he would be giving them up.  The petitioner answered affirmatively to both questions for all the rights mentioned.  The responses in the statement were handwritten, presumably by the petitioner, and the petitioner signed his name at the bottom of each page.  At the end of the statement, the petitioner signed a separate certification that said that he had read the statement, understood its full meaning, and that he was still requesting the Court to allow him to plead guilty to the specified offence.  The petitioner's counsel also signed a certification, attesting that he had advised the petitioner of the contents and meaning of the statement and that, in counsel's belief, the petitioner understands the statement's meaning and the consequences of his plea.

The statement provides persuasive evidence that the petitioner knowingly and voluntarily waived his rights in entering his plea.  Other decisions in this district have relied

on similar written statements in finding a petitioner's plea to be constitutionally valid. See, e.g., Peppers v. Warden, FCI-Gilmer, 2009 WL 6093441 (E.D. Pa. June 02, 2009); Casillas v. Grace, 2005 WL 195588 (E.D. Pa. Jan. 28, 2005); Dickerson v. Ryan, 1991 WL 255686 (E.D. Pa. Nov. 27, 1991).

This case differs from these others in one respect. In these other decisions, there was usually at least some discussion of the waiver of rights in the oral plea colloquy with the petitioner.[13] In this case, however, the trial court's colloquy did not address the petitioner's waiver of rights. The colloquy did confirm, however, that the petitioner's counsel reviewed the written statement with his client. At the colloquy, the trial court asked the petitioner whether he "understood fully" why he

---

[13] In Casillas, for example, the district court on habeas review found that a plea statement signed by the petitioner was "sufficient proof to establish that he was advised of his Boykin rights prior to the entry of his guilty plea," where the trial court had specifically directed the petitioner's counsel to go over the plea form with him and had confirmed on the record with the petitioner's counsel, in the petitioner's presence, that counsel was satisfied that the "petitioner understood the guilty plea form and the rights he was giving up." 2005 WL 195588 at *7; see also Peppers, 2009 WL 6093441 at *11 (holding that the petitioner's "acknowledgments in the written plea colloquy, the written plea agreement itself, and the answers . . . [given] at the oral colloquy support the conclusion that Petitioner pled guilty with an understanding of the charges against him, the rights he was waiving, and the consequences of the plea."); Dickerson, 1991 WL 255686 at *2 (relying on the disclosures in a signed written plea statement where "during the oral colloquy, the judge specifically asked both petitioner and his counsel whether petitioner fully understood each and every term of the written guilty plea form").

was "here today and the purpose of the plea and what the significance of the plea is" and whether he had "had a chance" to go over the statement with his counsel and whether he was satisfied with his counsel's services (to which the petitioner responded affirmatively). 4/11/91 N.T. at 10.

The petitioner's counsel subsequently testified at the evidentiary hearing held in the petitioner's second PCRA proceedings and confirmed that he "went over" the written plea statement with his client, although he also testified that he could not remember specifics of his discussions or the plea colloquy. 12/14/01 N.T. at 32-34. Although both the petitioner and his counsel testified at the evidentiary hearing, neither was questioned about the petitioner's understanding of his rights or his knowing waiver of them.

From this evidence that the petitioner's counsel reviewed the contents of the petitioner's written plea statement with him, and from the detailed discussion in that statement of the petitioner's rights and the waiver that would result if the plea were entered, the Court concludes that the circumstances of the plea adequately show that the petitioner knowingly and voluntarily waived his rights in entering his plea. The Court

therefore finds that claims 2.3 and 3.2 should be denied on the merits.[14]

   b.   The Remaining Claims of Ground Two and Three

   The remaining claims of Ground Two and Three must be dismissed under the deferential standard of review imposed by AEDPA.

   (1)   Claim 2.2

   In claim 2.2, the petitioner challenges the trial court's failure to place the terms of the petitioner's conditional guilty plea on the record.  This claim was raised in the petitioner's third PCRA proceeding.  The Pennsylvania Superior Court dismissed it on the state law ground that the petitioner had not established his innocence.  As discussed above, the establishment of innocence is not a federal requirement and neither prevents habeas review nor is owed deference under AEDPA.  The PCRA trial court did not address claim 2.2.

   As claim 2.2 was not addressed on the merits by the PCRA court, it can be reviewed de novo.  In doing so, the Court

_____

   [14]   As discussed more fully at the end of this memorandum, because the Court finds that reasonable jurists could disagree as to whether the record shows the petitioner made a knowing and voluntary waiver, the Court will issue a certificate of appealability as to claims 2.3 and 3.2.

must still presume state court factual determinations to be correct unless rebutted by clear and convincing evidence. § 2254(e)(1). Sharrieff v. Cathel, 574 F.3d 225, 227 (3d Cir. 2009) (citing Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001)).

In the petitioner's second PCRA proceeding, the PCRA trial court found, after an evidentiary hearing, that the petitioner's plea contained a condition allowing him to withdraw it if his co-defendant went to trial. Although the condition of the plea was not put on the record at the April 11, 1991, plea colloquy, it was later memorialized in the April 19, 1991, colloquy between court and counsel. The court found that this condition was "abandoned and waived" by the petitioner, as evinced by his counsel's representation at an April 19, 1991, hearing that the petitioner wanted to stand by his plea, despite his co-defendant going to trial, and by the petitioner's testimony at his co-defendant's trial, in which he did not describe his plea as conditional. 5/9/02 Order at 12-13. The petitioner has not rebutted these findings of fact, and the Court must therefore presume their truth.

Based on these findings, the Court finds no merit to the petitioner's claim 2.2 that the trial court erred in not putting the terms of the conditional plea on the record. The petitioner does not contend that he, the court, or counsel was unaware of this condition, but rather contends that, despite all

parties' knowledge of the condition, it was not placed on the record at his April 11 colloquy. Although this omission was improper, it does not invalidate his plea because, as found by the state court, there is no doubt as to the condition's existence or of its acceptance by the court and the petitioner. Any potential consequences from the failure to record the condition were prevented by the petitioner's subsequent waiver of it.

### (2) Claim 2.5

Claim 2.5 alleges that the trial court erred in accepting the petitioner's conditional guilty plea without an admission of guilt. The exact scope of this claim of error is not clear. The report and recommendation describes this claim as alleging that the trial court erred by "accepting a conditional guilty plea when the court knew Petitioner had reservations about pleading guilty and kept the record open so Petitioner could request to withdraw the plea." The report and recommendation interprets this claim as complaining about the method by which the trial court accepted the conditional guilty plea, rather than a complaint that the plea itself was not voluntary and intelligent, and recommends that it be denied.

The actual language used in the petitioner's pro se habeas petition alleges error on the ground that "the record

reveals that said plea was not a meaningful admission of guilt since it was premised entirely on the speculative admission of another." This language is identical to that used in the petitioner's Concise Statement of Issues Complained of on Appeal, filed July 2, 2002, in his second PCRA proceedings. This claim of error, however, was not addressed by the PCRA court and its meaning was never clarified. A similar claim was raised in the petitioner's third PCRA proceedings, in which the petitioner asserted that his plea was constitutionally invalid because it contained no admission of guilt. See 12/13/05 Op. at 5.

The Court will interpret claim 2.5 to be the same as that raised in the petitioner's third PCRA proceedings: an allegation that his plea violated the constitution because it contained no admission of guilt. In those proceedings, the Pennsylvania Superior Court dismissed this claim on state law "likely innocence" grounds that are not owed AEDPA deference. 12/1/06 Op. at 7.

The PCRA trial court, however, dismissed the claim on broader grounds. The court found that the petitioner's on-the-record colloquy of April 11, 1991, did "not contain an admission of guilt by the Petitioner." 12/13/05 Op. at 10. The court, however, found that the petitioner later admitted his guilt in an interjected comment at his October 16, 1991, sentencing. At the sentencing, the prosecution opposed the petitioner's request to

76

withdraw his plea by pointing out that the petitioner had admitted in his testimony at his co-defendant's trial that he shot the victim:

> [THE PROSECUTION]: But as I recall in the case in chief, [the petitioner] testified. He testified at great length as to his responsibility for the killing of Kemp Quallis. And I believe he was cross-examined by [the co-defendant's counsel] extensively. This man in open court, before 12 people, admitted that he shot Kemp Quallis one time through the brain with a 9mm handgun.
>
> [PETITIONER]: I still admit it.

Id. (quoting 10/16/91 N.T. at 19). The PCRA trial court found that this statement constituted an admission of guilt. The court also found that an express admission of guilt was not constitutionally required for a valid guilty plea, as long as an adequate factual basis for the plea existed. Id.

The Court has doubts that the petitioner's interjected comment at his sentencing can reasonably be considered an admission of guilt to the charge of second degree murder. On its face, the comment would seem to be an admission that the petitioner shot the victim, but not necessarily an admission that he did so intentionally, knowingly, recklessly or negligently, as required for a charge of murder under Pennsylvania law. 18 Pa. C.S.A. § 2501 (1990).

Whether or not the petitioner admitted his guilt, however, does not effect the validity of his plea. The United

States Supreme Court has made clear that a valid guilty plea need not contain an express admission of guilt.  See N.C. v. Alford, 400 U.S. 25, 37 (1970) ("[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty.").  Similarly, the constitution does not forbid the entry of a conditional plea, as long as it is knowing and voluntary.  U.S. v. Moscow, 588 F.2d 882, 889-90 (3d Cir. 1978).  The petitioner's claim of error based on the lack of an admission of guilt, therefore, will be dismissed.

(3)  Claim 2.7

Claim 2.7 alleges that the trial court erred by failing to entertain the petitioner's oral pre-sentence request to withdraw his conditional guilty plea.  This claim was addressed in the petitioner's second PCRA proceedings, which constituted the conclusion of his sentencing and his direct appeal.  On appeal, the Pennsylvania Superior Court's September 19, 2003, opinion adopted the opinion of the trial court.  The trial court held in its July 30, 2002, opinion that it was error for the earlier presiding judge not to have ruled on the petitioner's pre-sentence request to withdraw his plea at the time that the request was made in October 1991.  The trial court found, however, that this error was remedied by its May 9, 2002, opinion

which ruled on (and denied) the motion.  Because the state
court's decision on the claim is neither "contrary to" federal
law nor an objectively unreasonable application of fact to law or
an objectively unreasonable determination of facts, AEDPA
requires that the claim be dismissed.

### (4)  Claim 3.1

Claim 3.1 alleges that the Pennsylvania Superior Court
erred on direct appeal in concluding that the petitioner had
waived any conditions placed on his conditional guilty plea.  The
Superior Court's decision adopted the opinion of the trial court.
The trial court found, after an evidentiary hearing at which the
petitioner and his counsel testified, that the petitioner had
"abandoned and waived" the condition to his plea and had "opted
to let the plea stand even with knowledge that the co-defendant
would be going to trial."  7/30/02 Op. at 15, 16.  Under AEDPA,
this finding of fact must be presumed correct unless it has been
rebutted by clear and convincing evidence.  The petitioner has
presented no such evidence, and claim 3.1 must therefore be
dismissed.

### 2.  Claims of Error in Ground One

Ground one of the habeas petition brings thirteen
claims of ineffective assistance of counsel.  The Court has found

twelve of those claims, claims 1.1-1.8 and 1.10-1.13, to be
properly exhausted and cognizable.  After review on the merits,
the Court finds that all twelve claims should be dismissed.

To establish a claim for ineffective assistance of
counsel, a petitioner must show both that his counsel's
performance fell below an objective standard of reasonableness
and that his counsel's performance prejudiced his defense such
that there is a reasonable probability that, but for counsel's
unprofessional error, the result of the proceeding would have
been different.  Strickland v. Washington, 466 U.S. 668, 688, 694
(1984).  In the context of alleged ineffective assistance
resulting in a guilty plea, the requisite prejudice is shown if
there is a reasonable probability that, but for counsel's errors,
the petitioner would have proceeded to trial instead of pleading
guilty.  Villot, 373 F.3d at 333 (citing U.S. v. Nahodil, 36 F.3d
323, 326 (3d Cir. 1994)).  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.
Strickland, 466 U.S. at 694.  A reviewing court need not address
whether trial counsel's conduct was deficient, if it can more
easily resolve the claim by determining that no prejudice
resulted from the conduct.  Id. at 697.

a. <u>Claim 1.1</u>

Claim 1.1 alleges that the petitioner's trial counsel rendered ineffective assistance when he advised the petitioner to enter a conditional guilty plea, which is invalid in Pennsylvania.

This claim was addressed by the Pennsylvania Superior Court in its December 1, 2006, opinion denying the petitioner's third PCRA petition. The Superior Court found that this claim, along with several other ineffective assistance claims (claims 1.2, 1.3, 1.4, 1.5, and 1.12), had been included in the petitioner's supplemental post-sentence motion to withdraw his plea, which the petitioner attempted to file in 2001 in his second PCRA proceedings. The Superior Court noted that although the trial court had refused to allow the supplemental post-sentence motion to be filed, it had addressed the "underlying merit" of the ineffective assistance claims in the petition and its decision had been affirmed on direct appeal. The Superior Court therefore held that these ineffective assistance claims, including claim 1.1, had been finally litigated and could not be reviewed. 12/1/06 Op. at 8-9.

A review of the relevant trial court opinions of May 9, 2002, and July 30, 2002, shows that the "underlying merit" of the ineffective assistance claims raised in the supplemental post-

sentence petition, including claim 1.1. was addressed only in passing.  In the July 2002 opinion, the trial court reaffirmed its decision not to allow the supplemental petition to be filed, noting that the petition raised a "corn[u]copia of new bases [for relief] that, from an examination of the record, played no part in the defendant's desire to withdraw his guilty plea when the motions were originally made."  7/30/02 Op. at 17.  The Court interprets this to mean that the trial court found that the petitioner suffered no prejudice from the alleged instances of ineffective assistance included in the supplemental petition because the claimed ineffectiveness did not cause the petitioner to plead guilty.

The trial court's finding that the ineffective assistance alleged in claim 1.1 did not cause the petitioner to plead guilty is a decision on the merits of the claim and is subject to AEDPA deference.  As discussed earlier, if AEDPA deference applies, the Court cannot grant habeas relief unless the state court decision is "contrary to" established federal law or an objectively unreasonable application of law or an objectively unreasonable determination of the facts.

Here, although the trial court did not cite case law in its decision, it essentially applied the prejudice prong of Strickland.  The decision is therefore not "contrary to" established precedent.  The decision is also not an objectively

unreasonable application of the law or determination of the
facts.  Although the petitioner stated that he would not have
entered the plea if it did not contain a condition allowing him
to withdraw it if his co-defendant went to trial, the trial court
found that his plea did in fact contain this condition.  The
trial court further found that the petitioner, himself,
"abandoned and waived" the condition.  As discussed earlier,
under AEDPA, the Court must accept these factual findings as
true.

Based on these findings, it was not objectively
unreasonable for the trial court to conclude that, even if it
were objectively unreasonable for the petitioner's counsel to
have recommended the conditional plea, that advice caused no
prejudice because the condition was honored by the trial court
until it was waived by the petitioner.  In addition, as discussed
earlier, the petitioner has presented no evidence that a
conditional guilty plea is invalid under Pennsylvania law.

b.    Claim 1.2

Claim 1.2 alleges that the petitioner's trial counsel
was ineffective for failing to enter the conditional terms of his
plea on the record at the plea colloquy held on April 11, 1991.
Like claim 1.1, this claim was included in the petitioner's
proposed, but never filed, supplemental post-sentence motion to

withdraw his plea and was addressed on the merits by the trial court, which found it to have "played no part" in the petitioner's decision to plead guilty. As discussed in reference to claim 1.1, this finding is entitled to deference under AEDPA, and habeas relief can be granted only if the decision is "contrary to" federal law or an objectively unreasonable application of law or determination of fact.

As discussed in claim 1.1, the state court decision is not "contrary to" established federal law because it applies the prejudice prong of <u>Strickland</u>. The decision is also not objectively unreasonable in its application of <u>Strickland</u> or its determination of facts. Although the condition of the plea was not placed on the record at the April 11, 1991, colloquy, it was subsequently discussed on the record at the April 19, 1991, colloquy between counsel and the trial court, and all parties to the plea, as well as the trial court, knew of its existence. The failure to put the condition on the record at the formal plea colloquy therefore did not cause the petitioner to plead guilty and caused him no prejudice.

c.  <u>Claim 1.3</u>

Claim 1.3 alleges that the petitioner's counsel was ineffective for failing to insure that the court conducted an

adequate colloquy to record the conditional terms of the plea.[15]
Like claims 1.1 and 1.2, this claim was decided on the merits by
the trial court, which found the claim to have "played no part"
in the petitioner's decision to plead guilty.  As discussed
above, this finding, which is essentially that the claim fails to
satisfy the prejudice prong of <u>Strickland</u>, is entitled to
deference under AEDPA.

The Court interprets this claim as challenging the
adequacy of trial counsel's conduct in failing to have the trial
court conduct an adequate colloquy before accepting the
petitioner's guilty plea and in failing to himself ensure that
the petitioner entered a voluntary and knowing plea.  As
discussed above in reference to claims 2.3 and 3.2, the Court has
found that the trial court conducted an adequate colloquy
concerning the petitioner's waiver of his constitutional rights
to ensure that the waiver was knowing and voluntary.  Because the
Court has found that the colloquy was adequate, the Court does

---

[15]     Although the Court has followed the report and
recommendation's categorization of the petitioner's claims, this
paraphrase of the petitioner's claim is unduly narrow.  In his
pro se habeas petition, the petitioner alleges that his trial
counsel was ineffective for "failing to advise and explain to the
defendant the charge to which he pled guilty and the maximum
sentence of said plea" and that his PCRA counsel was ineffective
for failing to raise claims that his trial counsel was
ineffective for failing "to advise and explain to the defendant
the nature of the charge of second degree murder, the factual
basis for the plea, the presumption of innocence, and the
permissible range of sentences and/or fines."

not find that trial counsel's representation fell below an objective standard of reasonableness or that the trial counsel's conduct prejudiced the petitioner by causing him to enter an involuntary plea. _Strickland_, 466 U.S. at 688.

Claim 1.3 will therefore be denied.[16]

d. _Claim 1.4_

Claim 1.4 alleges that the petitioner's counsel was ineffective for advising the petitioner to plead guilty to avoid a joint trial with his co-defendant, so that his co-defendant's statement's could not be used against him. Like claims 1.1, 1.2, and 1.3, this claim was decided on the merits by the trial court, which found no prejudice resulted from the alleged ineffective assistance. The trial court's finding is entitled to AEDPA deference.

The trial court's finding that the alleged ineffective assistance caused the petitioner no prejudice is not objectively unreasonable. In subsequent proceedings on the petitioner's second PCRA petition, the trial court, after an evidentiary hearing, found that the petitioner's plea was not motivated by a desire to avoid having his co-defendant's statement used against

---

[16] Because the Court's decision to deny claim 1.3 rests on its denial of claims 2.3 and 3.2, for which the Court has indicated it will issue a certificate of appealability, the Court will also issue a certificate of appealability as to claim 1.3.

him.  Instead, the trial court credited the petitioner's statements at his co-defendant's trial that his plea was motivated by his realization of what he had done.  7/30/02 Op. at 15.  Under AEDPA, the Court must presume this finding to be correct because the petitioner has not rebutted it by clear and convincing evidence.  If, as found by the trial court, the petitioner's plea was not motivated by a desire to avoid his co-defendant's statements, then his counsel's advice to plead guilty to avoid those statements was not a motivating factor in his decision and the advice caused the petitioner no prejudice.

Claim 1.4 must therefore be denied.


e.   <u>Claim 1.5</u>

Claim 1.5 alleges that the petitioner's counsel was ineffective in advising the Court on April 19, 1991, in the petitioner's absence and allegedly without authorization, that the petitioner did not wish to withdraw his guilty plea, even though his co-defendant had elected to go to trial.  Like claims 1.1 through 1.4, this claim was decided on the merits by the trial court which found that no prejudice resulted from the alleged ineffective assistance.

The trial court's holding is entitled to deference under AEDPA and can only be disregarded if it is "contrary to" established precedent or an "objectively unreasonable"

application of law or factual determination.  The Court finds
that it is neither.  The trial court found that the petitioner
had "abandoned and waived" the condition of his plea that allowed
him to withdraw it if his co-defendant went to trial.  This
finding was based both on the petitioner's testimony at his co-
defendant's trial, in which he described his plea as having no
conditions, and by his counsel's April 19, 1991, representation
to the trial court that the petitioner did not wish to exercise
the condition of the plea, even though his co-defendant was going
to trial.  This finding has not been rebutted by clear and
convincing evidence and the Court must presume it correct.

Because the petitioner independently abandoned and
waived the condition of his plea, his counsel's allegedly
incorrect and unauthorized representation to the trial court that
he no longer wished to withdraw it caused the petitioner no
prejudice.  This claim therefore must be dismissed.


f.   Claim 1.6

Claim 1.6 alleges that the petitioner's counsel was
ineffective for failing to file a pre-sentence motion to withdraw
the guilty plea despite the petitioner's requests that he do so.
This claim was raised in the petitioner's first PCRA petition,
which was denied as time-barred, and was not raised in subsequent
petitions.  As discussed earlier in the section on procedural

exhaustion, the claim was properly exhausted because it was presented to all levels of the state court, but not decided on the merits. The claim is therefore subject to de novo review. Cone v. Bell, 129 S. Ct. 1769, 1784 (U.S. 2009).

Under the second prong of Strickland, the petitioner must show that his counsel's performance prejudiced him such that there is a reasonable probability that, but for the alleged error by counsel, the petitioner would have proceeded to trial instead of pleading guilty. Villot, 373 F.3d at 333 (citing Strickland, 466 U.S. 668). The petitioner has not made such a showing here.

In the petitioner's second PCRA proceedings, the PCRA trial court found that the petitioner had made an oral pre-sentence motion to withdraw his plea at his October 16, 1991, sentencing hearing. The PCRA trial court ruled on the merits of that motion, and on the petitioner's subsequent post-sentence written motion to withdraw his plea. In addition, as discussed earlier, the PCRA court also considered on the merits the ineffective assistance claims raised in the petitioner's proposed supplemental post-sentence motion to withdraw his plea, although it denied the petitioner permission to actually file that motion. Although pre-sentence motions to withdraw pleas are subject to a more lenient standard of review than post-sentence motions under Pennsylvania law, the PCRA trial court found that under either

standard the petitioner would not be entitled to withdraw his plea.

The PCRA trial court therefore implicitly ruled on all of the claims raised by the petitioner in his motions to withdraw his plea under the more lenient pre-sentence standard. Because the petitioner's claims were therefore heard and decided by the state court under the same standard that would have applied had his counsel filed a formal pre-sentence motion, the petitioner suffered no prejudice.

g. <u>Claim 1.7</u>

Claim 1.7 alleges that the petitioner's counsel was ineffective for advising the petitioner to testify in his co-defendant's trial. In ruling on the petitioner's third PCRA petition, the Pennsylvania Superior Court found that this claim had been properly dismissed because the petitioner had failed to plead and prove "'ineffectiveness of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" 12/1/06 Op. at 10 (quoting <u>Commmonwealth v. McClellan</u>, 887 A.2d 291, 298 (Pa. Super. Ct. 2005) (citing 42 Pa. Cons. Stat. Ann. § 9543(a)(2)(ii))).

As a ruling on the merits, the Pennsylvania Superior Court's decision is entitled to deference under AEDPA and habeas

relief can only be granted if the decision is "contrary to" established law or an objectively unreasonable application of law or determination of facts.  The decision is not contrary to established law:  "It is settled that the test for counsel ineffectiveness is the same under both the Pennsylvania and Federal Constitutions: it is the performance and prejudice test set forth in Strickland."  Commonwealth v. Gribble, 863 A.2d 455, 460 (Pa. 2004) (citing Strickland 466 U.S. 668); see also Commonwealth v. Pierce, 527 A.2d 973, 976 (Pa. 1987).  The decision is also not an objectively unreasonable application of law or determination of facts.  The Court interprets the Pennsylvania Superior Court's decision as holding that the petitioner had failed to establish the second prong of Strickland:  prejudice from the allegedly ineffective assistance of counsel.

The state trial court found, after an evidentiary hearing, that the petitioner had "abandoned and waived" the condition of his plea allowing him to withdraw it if his co-defendant had plead guilty.  The state court based this finding both on the petitioner's counsel's representation to the trial court at the April 19, 1991, colloquy that the petitioner still wished to plead guilty and on the petitioner's testimony at his co-defendant's trial in which he said that his plea had no conditions.  From this finding, which this Court must presume

correct, the petitioner abandoned and waived the condition to his plea sometime before he testified at his co-defendant's trial.

The petitioner's trial testimony, therefore, caused the petitioner no prejudice, because at the time he testified, he had already pled guilty and had abandoned and waived his conditional right to withdraw his plea. Although it is possible that, if the petitioner had not testified and admitted his guilt, then his subsequent petition to withdraw his plea would have been more likely to have been granted, this does not make a finding of no prejudice "objectively unreasonable," in light of the petitioner's subsequent interjection at his sentencing that he had shot the victim. The state court determination, "while not necessarily correct -- was not objectively unreasonable." Renico, 130 S. Ct. at 1865.

### h. Claim 1.8

Claim 1.8 alleges that the petitioner's counsel was ineffective because he abandoned the petitioner at his sentencing by failing to advise the petitioner not to answer the trial court's questioning concerning the crime once the petitioner stated that he wished to withdraw his plea. Like claim 1.7, this claim was dismissed by the Pennsylvania Superior Court in ruling on the petitioner's third PCRA petition on the ground that he had failed to plead and prove ineffectiveness of counsel that "so

undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 12/1/06 Op. at 10 (internal quotation omitted).  Like claim 1.7, the Court finds this decision subject to AEDPA deference and interprets it as a finding that the alleged ineffectiveness caused the petitioner no prejudice as required under the second prong of <u>Strickland</u>.

Applying the AEDPA standards of § 2254(d), claim 1.8 must be dismissed.  Because the Pennsylvania Superior Court's decision applies the <u>Strickland</u> test, it is not "contrary to" established law.  It is also not an unreasonable application of <u>Strickland</u> nor an unreasonable determination of facts.  As discussed with respect to claim 1.7, the state court found that the petitioner had abandoned and waived the condition of his plea by the time he testified at his co-defendant's trial in July 1991.  Accepting this finding as true, the petitioner both pled guilty and abandoned and waived the condition allowing him to withdraw his plea before he answered the trial court's questions at his October 1991 sentencing.  Based on this, a court could reasonably find that the incriminating statements the petitioner made in response to the questions at his sentencing caused him no prejudice because he had already admitted his guilt.

Claim 1.8 must therefore be denied.

i.   Claim 1.10

Claim 1.10 alleges that the petitioner's counsel was ineffective for failing to object to the court's jurisdiction to sentence the petitioner after more than six months had passed from the time of the guilty plea to sentencing.  Like claim 1.6, this claim was raised in the petitioner's first PCRA petition, which was dismissed as time-barred, and not raised in subsequent PCRA petitions.  As the claim was properly exhausted, but not decided on the merits, it is subject to de novo review.  Cone, 129 S. Ct. at 1784.

The Court finds that this claim must be denied because neither requirement of Strickland is met.  The petitioner cannot show either that his counsel acted unreasonably in not objecting to the court's jurisdiction based on the delay in his sentencing or that the lack of an objection prejudiced his defense such that there is a reasonable probability that, but for counsel's alleged error, the outcome would have been different.

Pennsylvania's Rules of Criminal Procedure provide that a sentence shall "ordinarily be imposed" within a specified time period.  See Pa. R. Crim. P. 704 (formerly Pa. R. Crim. P. 1405). At the time the petitioner was sentenced, then-applicable Pa. R. Crim. P. 1405(A) required sentencing within sixty days of the entry of a plea of guilty or nolo contendere, unless the court ordered the sentencing extended for a specific time period for

good cause shown.  Failure to impose a sentence within the time provided by the Rule entitles a defendant to a discharge only if the defendant can show prejudice.  <u>Commonwealth v. Anders</u>, 725 A.2d 170, 171-72 (Pa. 1999).  Prejudice cannot be presumed, but must be determined by evaluating (1) the length of the delay beyond the time provided in the Rule, (2) the reason for the improper delay, (3) the defendant's timely or untimely assertion of his rights, and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights.  <u>Id.</u>

If the petitioner's trial counsel had challenged the trial court's jurisdiction based on the delay between his plea and sentencing, that challenge would have failed.  A failure to sentence the petitioner within the time required by Pa. R. Crim. P. 1405A (now 704A) is not a jurisdictional defect and does not require dismissal.  Although a violation of Pa. R. Crim. P. 1405A can warrant dismissal if prejudice is shown, here the petitioner could not have shown the required prejudice.

Of the four <u>Anders</u> factors, two are inapplicable here. The state court record does not contain an explanation for the delay in the petitioner's sentencing, and the failure by the petitioner to assert his right to a timely sentencing must in this context be attributed to his counsel and not held against the petitioner.  Of the remaining two factors, both weigh heavily against a finding of prejudice.  The delay between the

petitioner's plea and his sentencing was only six months and the mandatory sentence for the crime to which he plead guilty was life imprisonment.

Because no prejudice resulted from the petitioner's sentencing delay, any motion to discharge the petitioner based on the delay would have been denied.  The petitioner's counsel was not ineffective for failing to make a meritless motion.  Thomas v. Horn, 570 F.3d 105, 121 n.7 (3d Cir. 2009).  Because the motion was meritless, failing to make it also caused the petitioner no prejudice.

j.    Claim 1.11

Claim 1.11 alleges that the petitioner's counsel was ineffective for failing to investigate or pursue a diminished capacity defense.  Like claim 1.6, this claim was raised only in the petitioner's first PCRA petition and was therefore not decided on the merits in state court.  It will therefore be reviewed de novo.  Cone, 129 S. Ct. at 1784.

Pennsylvania law recognizes a limited diminished capacity defense to first degree murder.  Under Pennsylvania law, a person is guilty of criminal homicide if he intentionally, knowingly, recklessly, or negligently causes the death of another human being.  18 Pa. Cons. Stat. Ann. § 2501.  Criminal homicide constitutes murder in the first degree when it is committed by an

intentional killing and constitutes murder in the second degree
when committed while the defendant was engaged as a principal or
accomplice in the perpetration of a felony. § 2502(a), (b).
Murder in the third degree constitutes any other kind of murder.
§ 2502(c).

A diminished capacity defense, if successful,
establishes that a defendant was incapable of forming the
specific intent to kill and thereby will reduce a murder charge
from first degree to third degree. Commonwealth v. Travaglia,
661 A.2d 352, 359 n.10 (Pa. 1995); Commonwealth v. Walzack, 360
A.2d 914, 915 n.1 (Pa. 1976). Diminished capacity, however, is
not a defense to murder in the second degree, which does not
require proof of a specific intent to kill. See Commonwealth v.
Garcia, 479 A.2d 473, 477, 477 n.3 (Pa. 1984). In addition, to
raise a diminished capacity defense, a defendant must admit his
general criminal liability, i.e. that he killed the victim.
Commonwealth v. Rainey, 928 A.2d 215, 237 (Pa. 2007) (citing
Commonwealth v. Laird, 726 A.2d 346, 353 (Pa. 1999)).

Even assuming that the petitioner could have
established a viable diminished capacity defense in this case,[17]

---

[17]     The petitioner testified at his co-defendant's trial
that he consumed methamphetamine and alcohol before he robbed and
killed the victim.  7/19/91 N.T. at 265, 272, 296-98.  He also
testified, however, that after taking these intoxicants, he was
able to drive a truck to meet the victim, conceive of a plan to
rob the victim after realizing he and his co-defendant did not
have enough money to buy the drugs they wanted, and to clean up

that defense could only have prevented him from being convicted of first degree murder.  It would not have provided a defense to the second degree murder charge against him, the charge to which he pled guilty.  The petitioner therefore cannot establish a reasonable probability that, but for his counsel's allegedly unprofessional conduct in not pursuing a diminished capacity defense, the outcome of this case would be any different. Strickland, 466 U.S. at 694.  Claim 1.11 will be dismissed.

k.  Claim 1.12

Claim 1.12 alleges that the petitioner's counsel was ineffective for failing to explain in the post-sentence motion to withdraw the guilty plea the precise reasons for allowing the petitioner to withdraw his plea.  Like claims 1.1 through 1.5, this claim was decided on the merits by the trial court which found that no prejudice resulted from the alleged ineffective assistance.  This decision is entitled to AEDPA deference.

The petitioner's trial counsel filed a post-sentence motion to withdraw his guilty plea on October 28, 1991.  The motion did not contain specific claims of error, but instead argued only that permitting withdrawal would not prejudice the

_____

the truck after shooting the victim.  Id. at 275-277, 280-83, 289-90.  Evidence that the petitioner was "thinking and acting coherently" can foreclose a diminished capacity defense.  See Commonwealth v. Marshall, 633 A.2d 1100, 1106 (Pa. 1994).

Commonwealth and would be fair and just and that failing to allow withdrawal would violate unspecified rights and privileges secured under the Fourteenth Amendment, state rules of criminal procedure, and the state constitution. The motion to withdraw was never addressed by the trial court and was finally decided (and denied) by the PCRA trial court on May 9, 2002, in the proceedings on the petitioner's second PCRA petition. In those proceedings, the petitioner, now represented by new counsel, moved for leave to file a supplemental motion, to raise additional arguments that had been omitted from his initial motion to withdraw his plea. The PCRA trial court denied the request to file a supplemental motion.

This Court construes claim 1.12 as arguing that the petitioner's trial counsel was ineffective for failing to raise in the initial motion to withdraw the arguments included in the proposed supplemental motion. The Court finds that the state court's finding that no prejudice resulted from the failure to raise these claims in the initial motion is neither contrary to law nor an unreasonable application of law or determination of the facts and so must be upheld under AEDPA.

The proposed supplemental petition raised twelve claims of ineffective assistance of trial counsel and seven claims of errors by the trial court to justify allowing withdrawal of the plea. Most of those claims are the same as those raised in this

habeas petition.  Claims in the supplemental petition correspond to claims 1.1, 1.2, 1.4-1.8, 1.10-1.12, 2.1-2.3, and 2.5-2.8.

Of these claims, the majority were raised in state PCRA proceedings, decided on the merits, and denied.  As discussed above in the section on procedural default, these are claims 1.1, 1.2, 1.4, 1.5, 1.7, 1.8, 1.12, 1.13, 2.1, 2.3, 2.5, and 2.7. Because, these claims were subsequently raised in state court PCRA proceedings and considered on the merits, counsel's failure to include them in the post-sentence motion to withdraw the plea caused the petitioner no prejudice and so cannot constitute inadequate assistance under <u>Strickland</u>.

Three of the claims in the supplemental petition were raised in subsequent state PCRA proceedings but were not considered on the merits.  These claims correspond to claims 1.6, 1.10, and 1.11.  These claims were raised in the petitioner's first PCRA petition, but were never decided on the merits in state court because the first petition was dismissed as time-barred.  Had these claims been included in the petitioner's post-sentence motion to withdraw his plea, they could have been considered on the merits by the trial court.  As set out above, however, this Court has considered these three claims under a de novo standard of review and found them to be without merit.  As such, the petitioner's counsel was not ineffective for failing to raise them.  <u>Thomas</u>, 570 F.3d at 121 n.7.

Two claims of trial court error in the supplemental petition were never subsequently presented to the state PCRA court. These correspond to claims 2.6 and 2.8, which the Court has found to be procedurally defaulted for habeas review. Claim 2.6 alleges the trial court erred by failing to learn from the petitioner whether he wished to withdraw his plea, after his co-defendant decided to go to trial. Claim 2.8 alleges the trial court erred by failing to resolve at the sentencing hearing whether the petitioner had asked his counsel to file a pre-sentence motion to withdraw the plea.

In addition, two other claims in the supplemental petition do not correspond to claims in the habeas petition and were also never presented to the state courts. One alleges that the petitioner's trial counsel was ineffective for withdrawing a pre-trial request to sever his case from his co-defendant's, even though his co-defendant gave a statement incriminating the petitioner and the purpose of the conditional plea was to avoid a consolidated trial. The other alleges that trial counsel was ineffective for failing to make a motion to continue sentencing so that the petitioner could file a written motion to withdraw his guilty plea prior to sentencing.

These four claims were never presented to the state courts and therefore, if they were meritorious, the failure of trial counsel to include them in the petition to withdraw could

constitute ineffective assistance.  The Court finds, however, that none of these four claims has merit.  The failure to raise them was therefore not ineffective assistance.  <u>Thomas</u>, 570 F.3d at 121 n.7.

Claim 2.6 fails because the state PCRA court, in a finding that this Court must presume correct, found that the petitioner had abandoned and waived the condition of his plea allowing him to withdraw it in the event his co-defendant went to trial.  Given this finding, the failure of the trial court to learn from the petitioner whether he wished to withdraw his plea caused him no prejudice.

Claim 2.8 fails because the PCRA trial court considering the petitioner's second PCRA petition found that the petitioner had made both an oral pre-sentence motion to withdraw his plea and a written post-sentence motion to withdraw his plea and decided each of them under both the pre-sentence and post-sentence standard of review.  Because the petitioner's post-sentence motion was considered under the more lenient pre-sentence standard of review, the trial court's failure to resolve whether the petitioner had asked his counsel to file a written pre-sentence motion caused the petitioner no prejudice.

The claim that counsel was ineffective for withdrawing a pre-trial request to sever the cases of the petitioner and co-defendant is without merit.  The state court record before the

Court shows that the request to sever, along with other pre-trial motions, was withdrawn as a result of the petitioner's plea, and that the withdrawal was made without prejudice in case the plea fell through. 4/11/91 N.T. at 4-5. After the plea, the co-defendant was subsequently tried separately. The Court finds that counsel's conduct was reasonable and caused the petitioner no prejudice.

The claim that trial counsel was ineffective for failing to make a motion to continue his sentencing also fails. The petitioner contends that a continuance would have allowed his counsel to file a written pre-sentence motion to withdraw his guilty plea. Because, as already discussed, the PCRA trial court considered the petitioner's post-sentence written motion to withdraw his plea under the more lenient pre-sentence standard of review, the petitioner suffered no prejudice from the failure to request a continuance.

l.  <u>Claim 1.13</u>

Claim 1.13 alleges that the petitioner's counsel was ineffective for failing to take steps to see that the petitioner's post-sentence motion to withdraw was disposed of in a timely manner, so that the petitioner could pursue a direct appeal. Like claims 1.7 and 1.8, this claim was addressed by the Pennsylvania Superior Court in the petitioner's third PCRA

proceedings and dismissed on the ground that the petitioner had failed to plead and prove "ineffectiveness of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 12/1/06 Op. at 10 (internal quotation and citation omitted). As explained in the Court's discussion of claim 1.7, the Court interprets this decision as holding that the petitioner had failed to establish prejudice as required under the second prong of Strickland.

Under AEDPA, the Court can only grant habeas relief on this claim if the conditions of § 2254(d) are met. The Court finds that they are not. Because the state court decision applies the Strickland standard, it is not contrary to federal law. It is a closer question, however, whether the decision is a reasonable application of law and determination of the facts.

The petitioner's post-sentence motion to withdraw his plea was filed October 28, 1991. It was never decided by the original trial court. It was only decided in the petitioner's second PCRA proceedings, after the petitioner's PCRA counsel noticed that it had never been resolved and moved to have it decided.[18] The PCRA trial court denied the motion on May 9, 2002,

_____

[18] At the petitioner's request, his original trial counsel moved and was granted permission to withdraw his representation on August 21, 1998. The petitioner then filed his first PCRA petition and was appointed new counsel. This new counsel failed to notice the trial court's failure to decide the petitioner's

104

and the petitioner then appealed.  Had the petitioner's original

trial counsel sought to have the post-sentence motion decided in

a timely fashion, there would not have been a ten year delay

between filing and deciding the motion.

This ten year delay raises due process concerns.  The

Speedy Trial Clause of the United States Constitution applies to

state court sentencing decisions, and it applies "from the time

an accused is arrested or criminally charged . . . up through the

sentencing phase of prosecution, . . . until one final,

pre-appellate determination has been made as to whether and for

how long the accused should be incarcerated."  Burkett v.

Cunningham, 826 F.2d 1208, 1220 (3d Cir. 1987).  Because the

petitioner's sentencing was not final and appealable until his

post-sentencing motion to withdraw his plea was decided, the

Speedy Trial provision applies to the entire delay from 1991 to

2002.

To determine whether that right has been violated, a

court must weigh four factors:  the length of delay, the reason

for the delay, the defendant's assertion of his right, and

prejudice to the defendant.  Burkett, 826 F.2d at 1222 (citing

Barker v. Wingo, 407 U.S. 514, 530 (1972)).  These factors,

---

post-sentence motion and filed the PCRA petition on other
grounds.  This first petition was dismissed as time-barred.  Only
when the petitioner filed his second pro se PCRA petition and was
appointed a different PCRA counsel, did counsel notice the
failure to decide the post-sentence motion.

except for the last, are not rigid tests, but guidelines and are to be interpreted through "a functional analysis of the right in the particular context of the case." Burkett at 1219 (quoting Barker at 522). Proof of prejudice, however, is "generally a necessary but not sufficient element of a due process claim." Id. at 1222 (quoting U.S. v. Lovasco, 431 U.S. 783, 790 (1977)).

In the context of delays to the right to file an appeal, the element of prejudice should be determined in light of three interests in promoting prompt appeals:

> 1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.

Burkett, 826 F.2d at 1222 (quoting Rheuark v. Shaw, 628 F.2d 297, 302-04 (5th Cir. 1980)). "'However, ... not every delay in the appeal of a case, even an inordinate one, violates due process.'" Id. at 1221 (quoting Rheuark, 628 F.2d at 303); see also Heiser v. Ryan, 951 F.2d 559, 563 (3d Cir. 1991) ("[D]elay, even inordinate delay does not necessarily violate due process.").

Most decisions addressing whether prejudice has resulted from delay have done so in the context of delays between conviction and sentencing. In that context, some courts have found that an extensive delay alone may be prejudicial because it may limit or eliminate the ability of a defendant to obtain

106

concurrent sentences or cause a defendant anxiety and concern because of the uncertainty of the length of his incarceration. See Burkett, 826 F.2d at 1224. Courts considering delays in ruling on post-sentencing motions, however, have not presumed prejudice solely from the delay. See Heiser, 951 F.2d at 563 (declining to presume prejudice from an eleven year delay in deciding a petitioner's motion to withdraw his plea and remanding for an evidentiary hearing).

Applying the four Burkett factors here, the first three weigh toward finding a due process violation. The length of the delay is extreme; no reason for it appears in the record; and in this context, much of the delay in asserting the petitioner's rights should be attributed to his counsel, whose effectiveness is at issue. The fourth factor of prejudice, however, is more important than the other factors. See Burkett, 826 F.2d at 1222; Heiser, 951 F.2d at 563.

From this record, it does not appear that the petitioner suffered any specific prejudice from the delay in deciding his post-sentence motion to withdraw his plea. None of the claims in that motion was waived or vitiated by the delay, and all were eventually decided on the merits by the PCRA trial court. The delay took place after the petitioner had been sentenced to life imprisonment so that he knew the length of his incarceration if his motion and subsequent appeal were

unsuccessful.  While the Court does not minimize the anxiety that the delay must have caused the petitioner, the general anxiety that can be presumed from such a delay is not ordinarily sufficient prejudice to establish a due process violation.

Having found that the petitioner has not shown sufficient prejudice from the delay in his sentencing to establish that his constitutional right to due process was violated, the Court similarly finds that the petitioner has failed to show sufficient prejudice to establish under <u>Strickland</u> that his counsel was ineffective for failing to prevent this delay.  Claim 1.13 will therefore be denied.[19]

E.    <u>Availability of an Evidentiary Hearing</u>

For the reasons above, the Court will deny the plaintiff's claims of error and will dismiss the petition for writ of habeas corpus.  The Court will do so without an evidentiary hearing.  Neither the petition nor the objections to the report and recommendation contains a request for an evidentiary hearing, and the petitioner was given an evidentiary hearing on many of his claims in his second PCRA proceedings.

The availability of an evidentiary hearing on a claim depends on whether the petitioner failed to develop the factual

---

[19]    As discussed below, however, the Court will issue a certificate of appealability as to claim 1.13.

108

basis of that claim in state court proceedings.  If the petitioner failed to develop the factual basis of his claim in state court then he can obtain an evidentiary hearing only if his claim of error relies on a new and retroactive rule of constitutional law or new facts not previously available. 28 U.S.C. § 2254(e)(2).  If the petitioner did develop the factual basis of his claim, then the availability of an evidentiary hearing is left to the discretion of the Court.  Schiro v. Landrigan, 550 U.S. 465, 467 (2007).  In exercising this discretion, the Court must consider whether a hearing "could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief," taking into account the deference that AEDPA requires to state court factual findings.  Id. at 474.

Applying these standards, the Court finds that it need not decide whether the petitioner developed the factual basis of his claims in state court because, even under the more lenient Schiro standard leaving the decision to grant a hearing to the Court's discretion, no hearing is warranted.  The petitioner has failed to come forward with any factual showing to rebut the state court's findings of fact, nor has the petitioner made any argument as to why an evidentiary hearing should be held.  The Court therefore finds that the petitioner has failed to show that an evidentiary hearing could establish any facts that, if true,

would entitle him to habeas relief.  The Court will therefore
deny the habeas petition without an evidentiary hearing.


     F.    <u>Issuance of a Certificate of Appealability</u>

        The Court's decision to deny the petitioner's petition
for a writ of habeas corpus is a final order.  Under 28 U.S.C.
§ 2253(c)(1)(A), the petitioner cannot appeal this final order
unless he is granted a certificate of appealability ("COA").  A
COA may issue only upon "a substantial showing of the denial of a
constitutional right."  § 2253(c)(2).  If a court grants a COA,
it must indicate the specific issues for which the certificate is
being awarded.  § 2253(c)(3).

        The standard for granting a COA differs slightly
depending on whether the claim at issue was dismissed on
procedural grounds or dismissed on the merits.  Where a claim is
dismissed on the merits, a COA should issue if the petitioner can
demonstrate that "reasonable jurists would find the district
court's assessment of the constitutional claims debatable or
wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Where the
grounds for dismissal are procedural, a COA should issue "when
the prisoner shows, at least, that jurists of reason would find
it debatable whether the petition states a valid claim of the
denial of a constitutional right and that jurists of reason would

find it debatable whether the district court was correct in its procedural ruling." Id.

Applying this standard, the Court finds that a certificate of appealability should issue for claims 1.3, 2.3, and 3.2, all of which concern the adequacy of the trial court's colloquy and the knowingness and voluntariness of the petitioner's plea, and for claim 1.13, which concerns the ten-year delay between the petitioner's plea and the disposition of his post-sentence motion to withdraw his plea.

Claim 1.3 alleges ineffective assistance of counsel in failing to insure that the trial court conducted an adequate colloquy. Claim 2.3 alleges error by the trial court in failing to conduct an adequate colloquy to determine whether the petitioner's plea was knowing and voluntary. Claim 3.2 alleges that the direct appeal court erred in concluding that the petitioner's guilty plea was knowing and voluntary despite the absence of an adequate plea colloquy with the petitioner. The Court finds that, given the trial court's failure to conduct any oral colloquy concerning whether the petitioner's waiver of his rights in entering his plea was knowing and voluntary, a reasonable jurist could disagree with the Court's conclusion that claims 1.3, 2.3, and 3.2 lack merit.

Claim 1.13 alleges ineffective assistance in failing to take steps to have the petitioner's post-sentence motion to

withdraw his plea decided in a timely fashion, which resulted in a ten-year delay of his direct appeal.  The Court finds that, given the length of the delay, and the lack of any excuse for it, a reasonable jurist could disagree with the Court's conclusion that the petitioner failed to establish sufficient prejudice from the delay to support a claim for ineffective assistance.

An appropriate Order will be issued separately.